[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17223
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00061-RDP

KERI PUTMAN,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 18, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Keri Putman appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of disability insurance benefits, pursuant to 42 U.S.C. § 405(g). She argues that the ALJ legally erred by giving insufficient weight to the medical opinion of her treating psychologist and by giving greater weight to the opinion of a non-examining consulting physician. She also contends that the Appeals Council failed to properly consider the additional evidence she presented, and that the ALJ who decided her claim denied her a fair hearing because of his alleged bias against Social Security claimants. After careful review, we affirm.

## I.

Putman filed an application for disability insurance benefits in October 2012, alleging that she was no longer able to work because of her bipolar disorder and back problems. Before her purported disability onset date of October 1, 2012, Putman had worked as a medical assistant and a veterinary technician. After the Social Security Administration denied her application and her request for reconsideration, she requested a hearing before an ALJ.

The ALJ conducted a hearing on Putman's claim in February 2014. At the hearing, Putman testified about her physical and mental impairments, including bipolar depression, anxiety disorder, eating disorders, degenerative disc disease, and sciatic nerve pain. The ALJ also heard testimony from a vocational expert in response to various proffered hypothetical scenarios.

The record before the ALJ included residual functional capacity assessments from Glen Archibald, M.D., Putman's treating psychiatrist, and Robert Estock, Ph.D., a non-examining state-agency consultant; consultative evaluations by Morton Rickless, M.D., an orthopedic surgeon, and Robert Summerlin, Ph.D., a psychologist; and Putman's treatment records.

In broad terms, Dr. Archibald opined that Putman, because of her bipolar disorder and back problems, had severe work-related limitations that rendered her disabled. For instance, Dr. Archibald asserted that she had "marked" limitations in a number of areas: concentration, persistence, or pace; responding to customary work pressures; understanding, carrying out, and remembering instructions; responding appropriately to supervisors and co-workers; and performing simple or repetitive tasks. It is undisputed that the limitations assessed by Dr. Archibald, if accepted, would render Putman disabled. Dr. Estock, by contrast, found that Putman's limitations were less severe and would not preclude competitive work.

In April 2014, the ALJ issued a decision denying Putman's application for disability insurance benefits, concluding that she was not under a disability from the alleged onset date, October 1, 2012, through her last insured date, March 31, 2013. The ALJ found that Putman had the following severe impairments: bipolar disorder I, in partial remission; mild essential tremor (possibly secondary to medication), in partial remission; asthma; generalized anxiety disorder; eating

3

disorder (possibly secondary to medication); mild degenerative changes in her lumbar spine with possible lumbar radiculopathy and sciatica.  But the ALJ concluded that these impairments, though severe, were not disabling.  In arriving at that conclusion, the ALJ gave "some but not great weight" to the opinion of her treating psychiatrist, Dr. Archibald, finding that the psychiatrist's opinion was not consistent with other evidence in the record.  The ALJ found that Dr. Estock's assessment was more consistent with the record as a whole.

Putman appealed the ALJ's decision to the Appeals Council, which denied her request for review.  With her appeal she submitted evidence of treatment records from October 2013 to January 2015, but the Appeals Council found that the evidence did not pertain to the period at issue.  She then sought judicial review from a federal district court, which affirmed both the ALJ's denial of her request for benefits and the Appeals Council's refusal to remand her case to the ALJ. Putman now brings this appeal.

## II.

"In Social Security appeals, we must determine whether the [ALJ's] decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted).  Review for substantial evidence is deferential; we must affirm if there is a reasonable basis in the record for the conclusion reached.  *See*

*id.*  We may not reweigh the evidence or decide the facts anew.  *Id.*  And we must affirm a decision that is supported by substantial evidence even if the evidence preponderates against the agency's findings.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

A claimant must be disabled to be eligible for disability insurance benefits. 42 U.S.C. § 423(a)(1)(E).  The ALJ must follow a five-step sequential evaluation to determine disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see* 20 C.F.R. § 404.1520(a).  As part of this evaluation, the ALJ must consider all relevant evidence, including medical records, medical opinions, and subjective testimony.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Medical opinions are statements from physicians and other medical sources that reflect judgments about the nature and severity of the claimant's impairments, including both symptoms and resulting limitations.  *Winschel*, 631 F.3d at 1178–79.  When evaluating medical opinions, the ALJ must clearly articulate the weight given to different medical opinions and the reasons for doing so.  *Id.* at 1179.

The ALJ must give a treating physician's opinion "substantial or considerable weight" unless there is "good cause" not to do so.  *Lewis*, 125 F.3d at 1440 (11th Cir. 1997); *see* 20 C.F.R. § 404.1527(c)(2)(providing that the medical opinion of a treating source is entitled to "controlling" weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence" in the record).  Such "good cause" exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

The opinions of non-examining physicians, including state agency psychological consultants like Dr. Estock, are generally entitled to little weight when contrary to those of examining or treating physicians, "and standing alone do not constitute substantial evidence."  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  Nevertheless, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Id.*; *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  And in general, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ can place on that opinion.  20 C.F.R. § 404.1527(c)(4).

Putman offers two reason why, in her view, the ALJ legally erred in its treatment of the medical opinions in the record: (1) the ALJ failed to provide good cause for giving less than substantial or considerable weight to the opinion of her treating psychiatrist, Dr. Archibald; and (2) the ALJ improperly gave greater weight to the contrary opinion of a non-examining agency consultant, Dr. Estock. We disagree on both points.

6

First, substantial evidence supports the ALJ's decision to give Dr. Archibald's opinion "some but not great weight," because the severe limitations in his assessment were inconsistent with or not supported by the record as a whole. While Dr. Archibald found that Putman was markedly limited in her ability to interact with authority figures such as supervisors, Putman herself reported that she had no difficulty getting along with authority figures. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (concluding that an ALJ provided good cause for giving a treating physician's opinion less weight in part because it was inconsistent with the claimant's self-reports). Similarly, the ALJ cited the fact that Dr. Rickless reported in his January 2013 physical evaluation that Putman "stated she stopped working due to her inability to lift the dogs and not because of her being bipolar." The ALJ found that Putman's statement, as reported, "greatly contradict[ed] the psychiatrist's opinion," which indicated that Putman had stopped working because of her bipolar disorder.

With regard to concentration, persistence, or pace, while Dr. Archibald found marked limitations, the evidence supported a contrary finding. Dr. Summerlin, who conducted a consultative psychological evaluation of Putman, found that her remote memory was generally intact and that testing reflected that she had "adequate attention and concentration." And the record supports the ALJ's finding that, "[a]lmost without variation, the claimant's neurological examinations

7

indicated no subjective or objective deficit in memory or any other facet of mental functioning."

Contrary to Putman's assertion, Dr. Summerlin's evaluation does not contradict the ALJ's finding that no doctor other than Dr. Archibald "reported any diminished mental capacity." To be sure, Dr. Summerlin noted that Putman "experienced significant variations in mood control," which "could be viewed as a significant impediment to full-time, productive employment."[1] But that finding does not suggest that Dr. Summerlin found any limits in Putman's mental capacity. In fact, the evaluation suggests the opposite. The doctor found that "[h]er abstract thinking ability, fund of general information, calculating skills, and vocabulary were reflective of an individual with average intelligence and post-high school training"; that "[h]er thought processes were logical, coherent, and focused"; and that "her thought content was responsive to questioning and without evidence of interference from a psychotic process."

Finally, although we understand Putman's concern that the ALJ may have overemphasized records from her neurologists regarding largely unrelated issues, a review of the ALJ's decision as a whole shows that these records were just one of many reasons the ALJ offered for giving Dr. Archibald's assessment less than

_____

[1] Although Putnam does not directly challenge the ALJ's treatment of Dr. Summerlin's evaluation, we note that the ALJ did not err in giving Dr. Summerlin's opinion less than great weight because his opinion as to whether Putnam could work was "equivocal at best."

substantial weight.[2]  As discussed above, the ALJ articulated several reasons for giving less weight to Dr. Archibald's opinion, and we conclude that the ALJ's determination that Putman did not have more than moderate functional limitations is supported by substantial evidence.

We also observe that the ALJ could have disregarded Dr. Archibald's assessment on the basis that it was wholly conclusory.  Although Dr. Archibald opined that Putman was unable to work and that she was markedly limited in several functional areas, the psychiatrist gave no explanation to support these opinions, even though the form that he used asked him to describe the symptoms, clinical signs, and laboratory findings which were the bases for the limitations.

In sum, we cannot say that the ALJ erred in giving some but not great weight to Dr. Archibald's opinion.

Second, the ALJ did not give undue weight to the opinion of the non-examining doctor, Dr. Estock.  While opinions of non-examining physicians are generally entitled to little weight when contrary to those of examining or treating physicians, "and standing alone do not constitute substantial evidence," "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz*, 825 F.2d at 280; *Sryock*, 764 F.2d at 835.  Here, the ALJ gave reasons

---

[2] While we see no issue with the ALJ's reliance on findings from mental status or psychiatric exams conducted by Putnam's neurologists, that Putnam reported the "resolution of most complaints" to her neurologists cannot be construed as saying anything about her bipolar and anxiety disorders, since it is clear in context that she was referring to only the issues for which she was seeing the neurologists, which were tremors and vision problems.

independent of Dr. Estock's opinion for giving less than substantial weight to Dr. Archibald's opinion, and those reasons were supported by substantial evidence. Because the ALJ reasonably concluded that the record as a whole did not support the severity of the limitations assessed in Dr. Archibald's opinion, the ALJ likewise reasonably concluded that Dr. Estock's less severe opinion was more consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4).

Moreover, even if the non-examining doctor did not review all of Putman's medical records before making his RFC determination, he cited portions of the record in support of his conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as Putman's testimony. The ALJ explained that "the evidence received into the record at the hearing level did not provide any new or material information" that would alter his findings about Putman's functional limitations. Having reviewed the records on which Putman relies, we cannot say that the ALJ's assessment was unreasonable.

### III.

Next, Putman argues that the Appeals Council improperly refused to consider new, material treatment records relevant to her disability application. We review *de novo* the Appeals Council's refusal to consider additional evidence. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

With a few exceptions, a Social Security claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council. *Id.* at 1320. Where the evidence submitted by the claimant is "new, material, and chronologically relevant," the Appeals Council must consider it. *Id.* When the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate. *Id.* at 1320–21.

Ordinarily, new evidence is "chronologically relevant" if "it relate[s] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(c). In this case, however, the relevant date for determining chronological relevance is not the date of the ALJ's decision, which was in February 2014, but rather Putman's last insured date, which was March 31, 2013. That earlier date controls because Putman's claim for disability insurance benefits depends on her "demonstrat[ing] disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211; *see Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) ("If a claimant becomes disabled [a]fter [s]he has lost insured status, [her] claim must be denied despite [her] disability.").[3] New evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987).

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Here, the Appeals Council did not err in refusing to consider the additional treatment records that Putman submitted.  The records show that Putman received lumbar epidural injections on four occasions from October 2013 to July 2014 and that she was diagnosed with anorexia by Dr. Archibald in March 2014 after losing 65 pounds from February through May 2014.  The earliest new treatment record is from just over six months after her date last insured, and the anorexia diagnosis is from nearly a year after that date.  Thus, the new treatment records, on their face, are not relevant to the period at issue.

Under certain circumstances, medical examinations conducted after the ALJ's decision may still be chronologically relevant if they relate to a time on or before the ALJ's decision or the date last insured, but no such circumstances are present here.  *See Washington*, 806 F.3d at 1322–23.  In *Washington*, we held that the opinion of a psychologist who examined the claimant after the ALJ's decision was chronologically relevant when the psychologist stated in his opinion that his conclusions were based on, among other things, his review of the medical records from the period before the ALJ's decision.  *See id.*  Here, however, Putman identifies nothing in the records to show that they relate to the period at issue.  Nor does she provide any explanation of how these records would have changed the administrative result.  *See Milano*, 809 F.2d at 766.

Accordingly, the Appeals Council did not err in refusing to consider the treatment records Putman submitted.

## IV.

Finally, Putman claims that the ALJ who denied her claim is biased against Social Security claimants and that she was denied a fair hearing as a result. She notes that the ALJ's approval rate is significantly lower than the average approval rate among other ALJs in Alabama.

A Social Security claimant is entitled to a hearing that is both full and fair. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The ALJ plays a "crucial role in the disability review process" and has a duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to each claim." *Id.* at 1401. Because the ALJ's decision "will usually be the final word on a claimant's entitlement to benefits," the ALJ's impartiality is "integral to the integrity of the system." *Id.* The ALJ thus must "not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." *Id.* at 1400 (quoting 20 C.F.R. § 404.940).

A presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id.*

13

Here, Putman has failed to demonstrate that the ALJ was biased in his handling of her case. Putman has not demonstrated that the ALJ failed to develop a full and fair record or carefully weigh the evidence, giving individualized consideration to each claim. Putman argues that the ALJ failed to properly weigh the medical opinions in the record, but, as we have established above, the ALJ did not err in the weight assigned to the medical opinions at issue. Putman points to no other specific instances of bias in her case. And without some particularized showing of a reason for disqualification, a generalized assumption of bias derived from the ALJ's low approval rate is insufficient to rebut the presumption of impartiality. *See id.* at 195–96 (states that "generalized assumptions" are insufficient to rebut the presumption).

## V.

For the reasons stated, we **AFFIRM** the district court's order affirming the ALJ's denial of Putman's claim for disability insurance benefits.