[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10413
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-01129-JEO


CORNELIUS WASHINGTON,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 1, 2015)

Before TJOFLAT, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Cornelius Washington appeals the district court's judgment affirming the Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits and supplemental security income.  On appeal, Mr. Washington primarily argues that the Appeals Council erred when it refused to consider additional evidence he submitted.  After careful consideration, we hold that the Appeals Council committed legal error when it failed to consider materials from Dr. Wilson, a psychologist who examined Mr. Washington; reverse the district court's judgment; and remand to the district court with instructions to remand to the Commissioner.

I.

Mr. Washington applied for disability insurance benefits and supplemental security income with the Social Security Administration.  In his applications, Mr. Washington asserted that he was unable to work and entitled to benefits because he suffered from bipolar disorder-type 2, impulse control disorder, and asthma.  After the Commissioner denied his applications, Mr. Washington requested and received a hearing before an administrative law judge ("ALJ").

In December 2011, the ALJ determined that Mr. Washington was not disabled within the meaning of the Social Security Act.  The ALJ used the regulations' five-step, sequential evaluation process to determine whether Mr. Washington was disabled.  *See* 20 C.F.R. § 416.920(a)(4).  First, the ALJ found

that Mr. Washington was not currently engaged in substantial gainful activity.

Second, the ALJ concluded that Mr. Washington suffered from bipolar disorder, a severe impairment.  Third, the ALJ determined that that Mr. Washington did not have an impairment that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, subpart P, appendix 1.  The ALJ found that Mr. Washington failed to meet listing 12.04[1] because he had only mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence, or pace.[2]  Fourth, the ALJ concluded that Mr. Washington had no past relevant work experience.  Fifth, the ALJ determined that based on Mr. Washington's residual functional capacity, there was a significant number of jobs in the national economy he could perform, including laundry worker, conveyor tender, and cleaner.

Mr. Washington requested that the Appeals Council review the ALJ's decision denying benefits and submitted additional evidence to support his disability claim.  The new evidence included materials from Dr. Wilson, a licensed

[1] An individual meets listing 12.04 if (A) he has medically documented persistence of "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)" and (B) this results in at least two of the following:  "[m]arked restriction of activities of daily living;" "[m]arked difficulties in maintaining social functioning;" "[m]arked difficulties in maintaining concentration, persistence, or pace;" or "[r]epeated episodes of decompensation, each of extended duration."  20 C.F.R. pt. 404, supt. P, app 1, listing 12.04.

[2] Mr. Washington testified about the severity, frequency, and limiting effects of his symptoms.  But the ALJ found his testimony not credible because it was inconsistent with the residual functional capacity assessment.

3

psychologist who examined Mr. Washington; Dr. Tulao, a psychiatrist who treated him; and treatment records from CED Mental Health Center where he received mental health treatment.  Mr. Washington argued to the Appeals Council that, considering this new evidence, he was disabled and entitled to benefits.  He also asserted that the ALJ failed to state adequate reasons for finding him not credible.

Dr. Wilson opined that given the combined effect of Mr. Washington's mental disturbances and cognitive limitations, "it is highly unlikely that he will be able to maintain any type of job" because of difficulties "with the social and the task and problem solving aspects of any job."  Psychological Evaluation at 4 (Doc. 6-7).[3]  Dr. Wilson's opinions were based on a July 2012 evaluation of Mr. Washington, which occurred approximately seven months after the ALJ's decision.  In his evaluation, Dr. Wilson found Mr. Washington had a "very deficient" fund of general information, "extremely deficient reading skills," and "deficient" abstract reasoning.  Id.  He concluded that Mr. Washington's overall verbal skills were in the low range of borderline to the upper end of intellectually disabled.  He also explained that Mr. Washington suffered from ongoing auditory hallucinations, was unable to think clearly, and had mood swings.  Dr. Wilson found it unlikely that Mr. Washington's status would improve in the next twelve months.

_____

[3] "Doc." refers to the docket entry in the district court record in this case.

Along with his report, Dr. Wilson submitted a Mental Health Source Statement, rating Mr. Washington's degree of limitation with respect to specific tasks related to (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.  In each category, Dr. Wilson found for the vast majority of the tasks that Mr. Washington's limitations were extreme, which is the highest level of limitation.

Dr. Tulao, who treated Mr. Washington from September 2010 through December 2011, opined that Mr. Washington was disabled.  But he could not identify the date of onset of Mr. Washington's disability or the expected duration of the disability and never identified a diagnosis.  He listed Mr. Washington's symptoms as "fatigue, diminished ability to think or concentrate, flight of ideas or subjective experience that thoughts are racing, and attention too easily drawn to unimportant or irrelevant external stimuli" and also identified the medications that he had prescribed to Mr. Washington and the side effects of those medications. Social Security Disability Questionnaire at 1 (Doc. 6-7).

The Appeals Council denied Mr. Washington's request for review, finding no reason to review the ALJ's decision.  In reaching this decision, the Appeals Council considered the treatment records from CED Mental Health Center but not the materials from Dr. Wilson and Dr. Tualo.  The Appeals Council explained that it refused to consider the additional evidence from Dr. Wilson and Dr. Tulao

because their opinions concerned a later time period and were immaterial to whether Mr. Washington was disabled on or before the date of the ALJ's decision.

Mr. Washington then filed a complaint in the district court, seeking judicial review of the Appeals Council's decision refusing to consider the evidence from Dr. Wilson and Dr. Tulao, as well as the Commissioner's denial of benefits. The district court affirmed, concluding that the Appeals Council properly excluded Dr. Wilson's opinions because they did not relate to the period on or before the ALJ's decision and Dr. Tulao's opinions because they were immaterial.[4] This appeal followed.

## II.

Mr. Washington argues that the Appeals Council committed legal error when it refused to consider evidence from Dr. Wilson and Dr. Tulao. We reverse the district court's judgment in favor of the Commissioner because the Appeals Council's refusal to consider Dr. Wilson's opinions was legal error. We remand with instructions that the district court remand the case to the Commissioner to consider the new evidence.

---

[4] In the alternative, the district court summarily concluded that even if this new evidence was considered, the Appeals Council's decision not to review the ALJ's decision was proper. The district court also held that the ALJ did not err in finding Mr. Washington not credible.

A.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). But the Appeals Council "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

"When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is . . . subject to judicial review . . . ." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The standard that federal courts apply when reviewing the Appeals Council's refusal to consider additional evidence submitted by the claimant is a question of first impression in this circuit. But our sister circuits have recognized that, under the regulations, whether evidence meets the new, material, and chronologically relevant standard "is a question of law subject to our *de novo* review." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *accord Farrell v. Astrue*, 692 F.3d 767, 770–71 (7th Cir. 2012); *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). We agree that when the Appeals Council erroneously refuses to

7

consider evidence, it commits legal error and remand is appropriate.  *See Farrell*, 692 F.3d at 771–72; *Threet*, 353 F.3d at 1191–92; *Bergmann*, 207 F.3d at 1071.[5]

## B.

The Appeals Council committed legal error when it refused to consider Dr. Wilson's opinions.  Although the Appeals Council refused to consider the materials because they were not chronologically relevant, the Commissioner now argues that the materials were also immaterial.  We disagree.[6]

## 1.

We begin with materiality.  Dr. Wilson's opinions are material because, if accepted, "there is a reasonable possibility" that they "would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  More specifically, there is a reasonable possibility that Dr. Wilson's opinions could establish that Mr. Washington had "an impairment[] that meets or equals" listing 12.04 because he experienced at least marked difficulties in maintaining social

---

[5] This is not a case in which the Appeals Council considered the additional evidence and then denied review.  When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not "required to provide a detailed rational for denying review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).  But we are addressing a different issue in this case:  whether the Appeals Council committed legal error when it refused to consider the claimant's additional evidence.

[6] We conclude, and the Commissioner does not challenge, that Dr. Wilson's opinions constitute new, noncumulative evidence.  *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (recognizing that cumulative evidence is not new).  Dr. Wilson's opinions were not previously in the record.  Moreover, there is no other evidence in the record addressing the combined effects of Mr. Washington's cognitive limitations and hallucinations, which Dr. Wilson explained caused an extreme degree of limitation in his social interactions, sustaining concentration, and persistence.

functioning and in maintaining concentration, persistence, or pace.  20 C.F.R. § 404.1520(a)(4)(iii).  Dr. Wilson's report explains that (1) Mr. Washington experienced auditory hallucinations and mood swings and was unable to control his thoughts, and (2) testing showed that he had significant cognitive defects, could barely read, and possessed verbal skills in the lower borderline or upper end of the intellectually disabled range.  Based on these findings, Dr. Wilson concluded that Mr. Washington would have difficulties with the "social and the task and problem solving aspects of any job."  Psychological Evaluation at 4 (Doc. 6-7).  In the Mental Health Source Statement, Dr. Wilson opined that Mr. Washington experienced extreme (that is, more than marked) limitations in almost all categories relating to social interaction, sustaining concentration and persistence, and adaptation.  Considering this evidence, a factfinder could reasonably conclude that Mr. Washington had at least marked difficulties in maintaining social functions, concentration, and persistence, and, thus, his impairment met listing 12.04.

The Commissioner argues that Dr. Wilson's opinions could not have changed the result of the administrative proceedings because his opinions are "wholly inconsistent" with other evidence in the record, to which a factfinder would give more weight.  Appellee's Br. at 22.  The Commissioner asserts that Dr. Wilson's findings contradict the opinion of Dr. Nichols, a psychologist who

9

examined Mr. Washington to determine if he was disabled.  Both Dr. Wilson and Dr. Nichols examined, but did not treat, Mr. Washington and disagreed about the severity of his difficulties in maintaining social functioning, concentration, persistence, and pace.  Given that both Dr. Wilson and Dr. Nichols based their opinions on examinations, we conclude there is a reasonable possibility that a factfinder could credit Dr. Wilson's opinions over Dr. Nichols's.[7]

The Commissioner also asserts that Dr. Wilson's opinions are "wholly inconsistent" with treatment notes from CED Mental Health Center, where Mr. Washington received mental health treatment, showing that he exhibited normal behavior and a willingness to learn.  Appellee's Br. at 22.  But the treatment notes reflect that Mr. Washington reported regularly experiencing hallucinations, hearing voices, having difficulty concentrating, being easily distracted, and struggling with anger.  These records are consistent with and, in fact, support Dr. Wilson's opinions.[8]  As such, we conclude that there is a reasonable probability that Dr.

---

[7] We express no opinion on whether Dr. Wilson's findings would be material if he contradicted the opinion of a medical provider who treated Mr. Washington.  *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . . .")

[8] The Commissioner also argues that Dr. Wilson's opinions contradict treatment records from Mr. Washington's emergency room visits when he sought treatment for an amputated finger, laceration, and bronchitis.  In these records, nurses noted that he demonstrated an ability and willingness to learn.  We conclude there is a reasonable probability that that a factfinder would credit Dr. Wilson's opinions based on a psychological evaluation over the nurses' notations.

Wilson's opinions would change the administrative results.  *See Hyde*, 823 F.2d at 459.

2.

The opinions contained in Dr. Wilson's materials—including that Mr. Washington had extreme limitations in social interaction, sustained concentration, and persistence—are chronologically relevant even though Dr. Wilson examined him several months after the ALJ's decision.  Dr. Wilson based his opinions on the combined effects of Mr. Washington's hallucinations and limited cognitive abilities.  Dr. Wilson understood that Mr. Washington had experienced hallucinations during the time period prior to the ALJ's decision because (1) Mr. Washington told Dr. Wilson that he had experienced hallucinations throughout his life, and (2) Dr. Wilson reviewed Mr. Washington's mental health treatment records from the period before the ALJ's decision reflecting that he repeatedly reported experiencing auditory and visual hallucinations.  Further, Dr. Wilson's opinions about Mr. Washington's cognitive defects, including that his verbal skills were in the range of borderline or intellectual disability, relate back to the period before the ALJ's decision.

There is no assertion or evidence here that Mr. Washington's cognitive skills declined in the period following the ALJ's decision.  Although Dr. Wilson never explicitly stated that his opinions related back to the date of the ALJ's decision, we

have recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (considering a "treating physician's opinion" even though "he did not treat the claimant until after the relevant determination date"), *superseded on other grounds by statute*, 42 U.S.C. § 423(d)(5). We therefore conclude that, in the specific circumstances of this case, Dr. Wilson's opinions are chronologically relevant, even though his evaluation occurred after the date of the ALJ's decision.

Because Dr. Wilson's opinions are new, material, and chronologically relevant evidence, the Appeals Council was required to consider them.[9] The Appeals Council's refusal to consider the new evidence from Dr. Wilson was an error of law. Accordingly, we reverse the district court's judgment and remand

---

[9] We conclude, however, that Dr. Tulao's questionnaire is not new or material evidence. The portion of his questionnaire listing Mr. Washington's symptoms and medications is cumulative because this evidence was already in the record. The remaining information in the questionnaire is immaterial. Dr. Tulao made no specific medical findings or diagnoses. In fact, the only noncumulative information in the questionnaire is his opinion that Mr. Washington is disabled. As we have previously explained, in disability determinations "we are concerned . . . with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see* 20 C.F.R. § 404.1527(d)(1) (recognizing that an opinion on whether a claimant is disabled is not a medical opinion and reserving to Commissioner the "responsib[ility] for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability"). Because the opinion that Mr. Washington is disabled creates no "reasonable possibility" of a different administrative result, it is immaterial. *Hyde*, 823 F.2d at 459. Thus, the Appeals Council did not err in refusing to consider Dr. Tulao's questionnaire.

with instruction that the case be returned to the Commissioner for consideration of this evidence in conjunction with all the other evidence in the record.[10]

III.

For the reasons set forth above, the district court's judgment is reversed. This case is remanded to the district court with instructions to remand it to the Commissioner for consideration of the new medical evidence.

**REVERSED AND REMANDED.**

---

[10] Mr. Washington also argues that considering this new evidence the Appeals Council's denial was not supported by substantial evidence and that the ALJ's determination that he was not credible was not supported by substantial evidence. Because this case must be remanded for consideration of the new evidence, we need not address these arguments.