[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11557
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00592-RDP

KRISTY HUNTER,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 16, 2017)

Before MARCUS, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Kristy Hunter appeals the district court's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for supplemental security income, 42 U.S.C. § 1383(c)(3). Hunter presents two arguments on appeal. First, she contends that the Appeals Council did not properly consider her newly submitted evidence. Second, she argues that she did not validly waive her right to counsel and that she was prejudiced by the lack of counsel. We agree with her first contention but not her second. We therefore affirm in part and vacate and remand in part.

**I.**

Hunter applied for supplemental security income in December 2011, alleging that she was unable to work due to a combination of ailments, including high blood pressure, sleep apnea, carpal tunnel, fibromyalgia, arthritis, back pain, migraine headaches, depression, and panic attacks. Hunter has no past relevant work. After her application was denied initially and upon reconsideration, Hunter requested a hearing before an Administrative Law Judge ("ALJ").

Hunter's attorney withdrew before the hearing in June 2013. She appeared at the June 17, 2013, hearing, unrepresented. Before the hearing, she had received a document entitled "Your Right to Representation," which informed her of her right to a representative, what the representative could do, and the availability of free counsel or a contingency arrangement. The notice also explained that the

2

attorney could charge no more than 25 percent of her past-due benefits or $6,000, whichever was less.

At the hearing, she signed a "Right to Counsel" form indicating that she understood her right to be represented, how a fee agreement may limit legal fees, and the possibility of obtaining free counsel. The ALJ then discussed these same matters with Hunter, reiterating that she had an absolute right to have representation. Because Hunter indicated that she wanted a continuance to obtain another attorney, the ALJ continued the hearing for 60 days and instructed her to let the agency know if she needed additional time. The ALJ offered to give her a list of organizations that could help her find another representative.

The hearing was rescheduled for October 3, 2013. A month before the hearing, Hunter received notice of the hearing and another document outlining her right to representation. A couple weeks later, Hunter received another notice reminding her of the hearing. Hunter sent back a form indicating that she could not appear because her husband worked and she was having difficulty reaching her lawyer due to phone issues.

Hunter did not appear for the October 3 hearing. As a result, the agency sent her a notice asking her to explain in writing why she did not appear. In response, Hunter submitted a written statement explaining that she thought her lawyer was

3

going to appear for her, her husband was working, and she had no way to get to the hearing. She indicated that she did not want to appear for another hearing.

The agency rescheduled Hunter's hearing for April 21, 2014. Before the hearing, Hunter received the same notices as before explaining her right to representation. Hunter again did not appear for the hearing, and the agency again issued Hunter a notice directing her to explain why she did not appear. The notice also stated that the agency could decide her application without a hearing if she made that request in writing. In response, Hunter submitted a written statement stating that she did not wish to appear for another hearing due to anxiety and that the ALJ could move forward with deciding her claim.

The ALJ issued an unfavorable decision on Hunter's claim on August 8, 2014. The ALJ gave a brief procedural history of the case and stated that Hunter "knowingly and voluntarily waived in writing her right to personally appear and testify at a hearing." The ALJ then found that Hunter had the severe impairments of hypertension, morbid obesity, panic disorder with agoraphobia, and depression. But the ALJ determined that these impairments did not meet the severity of a listed impairment and that Hunter was capable of performing work that was available in the national economy. Thus, the ALJ concluded that Hunter had not been under a disability since the application date, December 31, 2011.

Among other evidence considered by the ALJ, the record contains a consultative psychological evaluation by Jack Bentley, Ph.D., from April 2012, and a psychological assessment by Robert Estock, M.D., a non-examining state-agency consultant, also from April 2012.  Dr. Bentley diagnosed Hunter with depressive disorder and panic disorder with agoraphobia.  He found that Hunter had a long history of a panic disorder, which had been exacerbated by the death of her grandmother in October 2011.  He opined that, due to her multiple health problems, Hunter's impairment level for even simple tasks fell in the marked to severe range.  Dr. Estock's assessment was less severe.  He opined that Hunter's mental condition resulted in only moderate limitations.

The ALJ gave Dr. Bentley's opinion limited weight because he was not an acceptable medical source—he was not licensed to practice psychology in the State of Alabama—and his findings were based largely on Hunter's physical issues, which the ALJ said Dr. Bentley was "not qualified to address."  The ALJ gave Dr. Estock's opinion "great weight" because it appeared "to accurately assess the claimant's functional abilities, as demonstrated in her longitudinal treatment history."

One month after the ALJ issued his unfavorable decision, Hunter informed the agency that she had obtained a lawyer to represent her.  Hunter then requested review of the ALJ's decision from the Appeals Council and submitted additional

evidence to support her disability claim.  This new evidence included materials from David Wilson, Ph.D., a licensed psychologist who examined Hunter, and treatments records from July 2014.

In a report of his findings, Dr. Wilson opined that Hunter "would have difficulty working at all" because of deficits in memory, thinking, processing information, and the ability to withstand day-to-day occupational pressures.  Dr. Wilson's opinions were based on an evaluation of Hunter on December 8, 2014, four months after the date of the ALJ's decision.  Dr. Wilson found that Hunter had "very poor mental control and attention," "serious problems with short term memory and working memory," "extremely deficient acquired information," and "very poor abstract thinking."  Dr. Wilson stated that it was "likely that her severe depression and anxiety [were] currently interfering with her ability to think clearly."  Dr. Wilson opined that it was unlikely Hunter's condition would improve in the next 12 months.

Dr. Wilson also prepared a Mental Health Source Statement in which he answered a series of "yes" or "no" questions about Hunter's ability to perform work-related activities.  Dr. Wilson stated that Hunter could not maintain concentration for periods of at least two hours, that she could not maintain regular attendance or be punctual, that she could not sustain an ordinary routine without special supervision, that she could not accept instructions and respond

appropriately to criticism from supervisors, and that she could not maintain socially appropriate behavior in the work place. And, significantly, Dr. Wilson opined that Hunter's limitations existed back to July 2008, which was her alleged disability onset date.

The Appeals Council denied review. The Appeals Council considered the additional treatment records but found that they did not provide a basis to change the ALJ's decision. As for the materials from Dr. Wilson, the Appeals Council found that they were not chronologically relevant, stating, "[T]he [ALJ] decided your case through August 8, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 8, 2014."

Hunter then filed a complaint in federal district court raising, among other issues, the Appeals Council's refusal to consider Dr. Wilson's evaluation and the validity of her waiver of counsel. The district court affirmed. First, the court found no error in the Appeals Council's treatment of Dr. Wilson's report because it did not "clearly speak to the relevant time period of December 31, 2011, through August 8, 2014." Second, the court found that Hunter had been informed of and validly waived her right to counsel. Hunter now appeals.

**II.**

7

Hunter argues that the Appeals Council erred in refusing to consider the materials from Dr. Wilson. She maintains that these materials are chronologically relevant. We agree.

With a few exceptions, a Social Security claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). Where the evidence submitted by the claimant is "new, material, and chronologically relevant," the Appeals Council must consider it. *Id.* "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our *de novo* review." *Id.* at 1321 (internal quotation marks omitted). And "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.*

The Appeals Council determined that the materials from Dr. Wilson were not chronologically relevant because they were "about a later time" and did not affect the decision about whether she was disabled on or before August 8, 2014. For new evidence to be "chronologically relevant," it must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(c). Medical examinations conducted after an ALJ's decision may still be chronologically relevant if they relate back to a time on or before the ALJ's decision. *See Washington*, 806 F.3d at 1322–23.

In *Washington*, we found chronologically relevant the opinion of a psychologist who examined the claimant seven months after the ALJ's decision. *Id.* The psychologist found that the claimant had extreme limitations due to the combined effects of hallucinations and limited cognitive abilities. *Id.* at 1322. In holding that the opinion was chronologically relevant, we noted that the psychologist relied on, among other things, medical records from the period before the ALJ's decision and the claimant's statements about that period of time. *Id.* We also explained that, while the psychologist "never explicitly stated that his opinions related back to the date of the ALJ's decision," there was no evidence that the claimant's cognitive skills "declined in the period following the ALJ's decision." *Id.* We therefore concluded that the psychologist's opinion was chronologically relevant even though his evaluation occurred after the date of the ALJ's decision. *Id.* at 1323.

Here, we conclude that the opinions contained in Dr. Wilson's materials are chronologically relevant even though Dr. Wilson examined Hunter four months after the ALJ's decision. As in *Washington*, Dr. Wilson reviewed Hunter's medical records from the period before the ALJ's decision in preparing the evaluation. He also considered Hunter's statements about that same period, including her history of panic attacks. And the evaluation here was conducted closer in time to the ALJ's decision than the evaluation in *Washington*.

9

Moreover, the materials in this case contain what the materials in *Washington* lacked, which is an "explicit[] state[ment] that [the psychologist's] opinions related back to the date of the ALJ's decision." *Id.* at 1322. Specifically, Dr. Wilson's Mental Health Source Statement stated that Hunter's limitations—including that she could not maintain concentration for a two-hour period, that she could not sustain an ordinary routine without special supervision, that she could not accept instructions and respond appropriately to criticism from supervisors, and that she could not maintain socially appropriate behaviors—existed back to July 2008.

We are not persuaded by the Commissioner's argument that Dr. Wilson's evaluation reflects a worsening of Hunter's condition after the date of the ALJ's decision. *Cf. id.* (finding "no assertion or evidence here that Mr. Washington's cognitive skills declined in the period following the ALJ's decision"). The Commissioner cites as evidence of such a worsening the fact that Hunter "reportedly was receiving increased mental health treatment at the time of Dr. Wilson's evaluation." But the Commissioner ignores the additional treatment records that were submitted to the Appeals Council.

These records show that Hunter experienced severe panic attacks in July 2014, before the date of the ALJ's decision, for which she sought medical treatment from the emergency room and elsewhere  For instance, one treatment

10

record from July 19, 2014, states that Hunter reported experiencing panic attacks and "black outs" every day for the past week. Before that, she experienced panic attacks two to three times per week. Another record from a few days later states that Hunter complained of panics attacks, blackouts, and anxiety daily for over a year. These records contradict the claim that Hunter's condition worsened in a material way only after the date of the ALJ's decision.[1]

Dr. Wilson's 2014 evaluation was also based on the same diagnoses—panic disorder and depression—as Dr. Bentley's 2012 evaluation. Dr. Wilson's evaluation does not reflect any new condition, and while it is arguably more severe that Dr. Bentley's evaluation, it is not significantly so. Dr. Bentley's evaluation reported that Hunter has long suffered from anxiety and that her "panic attacks have been gradually escalating in frequency and intensity over the last few years," particularly after her grandmother's death in 2011. Dr. Bentley also noted that Hunter avoided leaving the house, that she "had to discontinue operating a motor vehicle due to the severity of her anxiety," and that her "significant anxiety" during the interview affected her ability to focus her attention span. Dr. Wilson reported similar issues, including that Hunter's anxiety affected her ability to think and process information and that Hunter rarely ventures out of the home.

---

[1] Also, Hunter reported to Dr. Bentley that she had not received psychiatric treatment because she did not have health insurance.

Finally, the fact that some of Dr. Wilson's statements were phrased in terms of Hunter's current functioning does not mean that his opinions do not also speak to Hunter's functioning during the period before the ALJ's decision. As we have explained, Dr. Wilson relied on Hunter's medical records from the period before the ALJ's decision and indicated that his opinions related back to that time.

In sum, the "specific circumstances" at issue in *Washington* are also present here. *See* 806 F.3d at 1323. For this reason, we hold that Dr. Wilson's evaluation is chronologically relevant because it related back to the period on or before the date of the ALJ's decision, even though his evaluation occurred after the date of the ALJ's decision.

We also have little difficulty concluding that the materials from Dr. Wilson were new and material. Dr. Wilson's opinions plainly are new, and they "are material because, if accepted, there is a reasonable possibility that they would change the administrative result." *Id.* at 1321 (internal quotation marks omitted). To begin with, it appears to be undisputed that the limitations expressed in his evaluation and the Mental Health Source Statement, if accepted, would render Hunter disabled.

And we cannot say that no reasonable factfinder could credit Dr. Wilson's opinions. The record before the ALJ contained only two medical opinions of note. The first was from Dr. Bentley, but the ALJ found that he was not an acceptable

medical source and that his opinions were based on issues he was not qualified to address. The second was from Dr. Estock, but, as a non-examining physician, his opinion is, as a general matter, entitled to less weight than an examining physician like Dr. Wilson. Plus, Dr. Wilson's opinion would be evaluated in conjunction with the more recent treatment records that Hunter submitted to the Appeals Council after the date of the ALJ's decision. For these reasons, we conclude that there is a reasonable probability that Dr. Wilson's opinions would change the administrative results. *See id.* at 1322.

Because Dr. Wilson's opinions are new, material, and chronologically relevant, the Appeals Council was required to consider them, and its refusal to do so was an error of law. *See id.* at 1323. We therefore vacate the district court's judgment and remand with instructions that the case be returned to the Commissioner for consideration of this evidence in conjunction with all the other evidence in the record.

## III.

Next, Hunter argues that the ALJ failed to ensure that she knowingly waived her right to counsel and that the ALJ therefore denied her a full and fair hearing. She asserts that she was prejudiced by the lack of counsel, who could have obtained a timely statement by a treating physician, developed a better record of Hunter's pain and anxiety, and cross-examined the vocational expert.

13

A claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The claimant must show that she was prejudiced by lack of counsel before it is determined that the claimant's right to due process has been violated to such a degree that the case must be remanded. *Id*. at 1423. Prejudice may exist where the record reveals evidentiary gaps that result in unfairness or "clear prejudice." *Id*.

Here, Hunter validly waived her right to counsel. *See Graham*, 129 F.3d at 1422. As we have summarized above, the record reflects that she was repeatedly informed—through notices, documents, a waiver-of-counsel form that she signed, and the ALJ himself at her initial hearing— that she had the right to counsel or non-attorney representation. Contrary to her claim on appeal, Hunter was specifically informed that an attorney could charge no more than 25 percent of her past-due benefits or $6,000, whichever was less, and that there was a possibility that counsel might represent her for free or on a contingency basis. The ALJ also offered to provide her with a list of organizations that could help her obtain counsel. Nevertheless, Hunter agreed in writing to waive her appearance at a hearing, and she told the ALJ to move forward with her claim.

Beyond claiming that the ALJ failed to fulfill its enhanced duty towards her as a *pro se* party, Hunter does not identify any additional action the ALJ should

14

have taken.  Because the record is clear that the ALJ fully informed Hunter of her right to representation, we conclude that the ALJ did not err with respect to this issue.

## IV.

For the reasons set forth above, the district court's judgment is affirmed in part and vacated and remanded in part.  This case is remanded to the district court with instructions to remand it to the Commissioner for consideration of the new medical evidence.

**AFFIRMED IN PART; VACATED IN PART and REMANDED with instructions.**