[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16806
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00243-PDB

MARY MARGARET LUPARDUS,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 17, 2017)

Before MARCUS, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Appellant Mary Lupardus appeals the magistrate judge's order affirming the Commissioner of Social Security's ("the Commissioner") partially favorable decision awarding her a closed period of disability. On appeal, Lupardus argues that the Administrative Law Judge's ("ALJ") determination that she was only entitled to a closed period of disability because she experienced medical improvement was not supported by substantial evidence. She also asserts that the Appeals Council erred by not granting review based on the new evidence she submitted. After careful review, we affirm.

## I.    BACKGROUND

In July 2011, Lupardus filed an application for disability insurance benefits with the Social Security Administration. Alleging a disability onset date of January 24, 2011, she represented that she was disabled and unable to work due to a lower back and left thumb injury. The Commissioner denied Lupardus's application for benefits upon initial review and reconsideration.

At a subsequent hearing before the ALJ on July 17, 2013, Lupardus testified that she uses a cane, a walker, and a wheelchair that were suggested by her physician but not prescribed. She has been unable to walk without a walker since 2011. She stopped working in January 2011 after she was injured at work, but she had looked for clerical work since that time. She indicated, however, that she is not able to sit or stand. She had previously worked as a telephone customer

2

service representative, a mail handler, an officer manager, a medical assistant, and an usher. During a typical day, she does light housework and usually spends six or seven hours completing online classes.

Following the hearing, the ALJ issued a partially favorable decision, concluding that Lupardus was under a closed period of disability from January 24, 2011, through April 1, 2012. However, the ALJ concluded that Lupardus was no longer disabled and capable of performing her past relevant work as of April 2, 2012.

Based on the evidence, the ALJ determined that from January 24, 2011, through April 1, 2012, Lupardus suffered from disorders of the spine and left thumb. Although these impairments did not meet or equal any of the listed impairments in the Social Security regulations, the ALJ determined that Lupardus had the residual functional capacity to perform less than the full range of sedentary work during this time period and thus could not perform her past relevant work. Concluding that there were no jobs that existed in the economy that Lupardus could perform, the ALJ determined that Lupardus was disabled from January 24, 2011, through April 1, 2012.

The ALJ concluded, however, that medical improvement related to Lupardus's ability to work occurred as of April 2, 2012. Specifically, as of that date, Lupardus has had the residual functional capacity to perform a range of

sedentary work with some restrictions.  Based on Lupardus's medical improvement and her increased residual functional capacity, the ALJ determined that Lupardus could perform her past relevant work as an office manager and as a telephone sales representative.  Accordingly, the ALJ concluded that Lupardus's disability ended on April 2, 2012.

Following the ALJ's decision, Lupardus requested review from the Appeals Council.  She also submitted additional evidence, including a vocational services evaluation completed on November 21, 2013.  The Appeals Council denied Lupardus's request for review, stating that it considered the additional evidence but that this evidence did not provide a basis for changing the ALJ's decision.

In 2015, Lupardus filed a complaint in the district court challenging the unfavorable portion of the ALJ's decision.  The parties consented to the case being heard before a magistrate judge.  The magistrate judge subsequently entered a final judgment affirming the Commissioner's decision that Lupardus was only entitled to a closed period of disability.  This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion."

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)

(quotations omitted).  We may not reweigh the evidence and decide facts anew,

and must defer to the ALJ's decision if it is supported by substantial evidence.  *See*

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

### B.    ALJ's Determination Regarding Medical Improvement

Lupardus argues that substantial evidence does not support the ALJ's

determination that she experienced medical improvement and was no longer

disabled as of April 2, 2012.

The ALJ may terminate a claimant's benefits upon a finding that there has

been medical improvement in the claimant's impairment or combination of

impairments related to the claimant's ability to work, and the claimant is now able

to engage in substantial gainful activity.  42 U.S.C. § 423(f)(1).  Medical

improvement is defined as "any decrease in the medical severity of [the claimant's]

impairment(s) which was present at the time of the most recent favorable medical

decision that [the claimant was] disabled."  20 C.F.R. § 404.1594(b)(1).  This

determination must be based on medical evidence showing an improvement in the

symptoms, signs, or laboratory findings associated with the impairments.  *Id.*

Moreover, the claimant's medical improvement must relate to her ability to work.

*See id.* § 404.1594(a).  A medical improvement relates to a claimant's ability to

work if her impairments have decreased in severity since the last favorable decision and her capacity to perform basic work activities has increased during that period. *Id.* § 404.1594(b)(3).

Here, substantial evidence supports the ALJ's finding that there has been substantial improvement in Lupardus's medical condition and residual functional capacity as of April 2, 2012. The ALJ found Lupardus disabled because her back and thumb injuries were of such severity that she could not perform work at even the sedentary level. In light of her residual functional capacity, the ALJ determined that Lupardus could not perform her past relevant work and that there were no jobs in the economy that she could perform.

However, the record shows that since that time, Lupardus has experienced significant improvement such that she is no longer disabled. Indeed, the medical records from Lupardus's treating physician, Dr. Mark Hofmann, dated between March and April 2012, indicated that it was possible Lupardus was capable of performing more activity than she was currently performing and that she was exhibiting a greater disability than one would expect from her diagnosis. The notes further indicated that Lupardus could do sedentary work with some restrictions.[1] Specifically, on March 29, 2012, Dr. Hofmann discharged Lupardus from the pain management rehabilitation program due to lack of progress and

---

[1] Notably, as early as February 2012, Lupardus reported to Dr. Hofmann that her gait was improving and that she could tolerate standing for 40 minutes at a time.

inconsistencies in physical therapy.  In particular, Lupardus exhibited only inconsistent leg weakness and the range of motion in her shoulder was normal upon initial examination, yet she irregularly exhibited only 100 to 110 degrees of shoulder flexion.

On April 24, 2012, Dr. Hofmann noted that Lupardus had no focal motor or sensory deficits in her lower extremities, her bilateral straight-leg raising tests were negative, and that she should have more functionality based on her medical condition and the diagnostic studies.  In July 2012, Dr. Hofmann encouraged Lupardus to increase her activity level and noted that he did not believe she had a neurological problem.

In an October 2012 treatment note from Dr. Ismail Salahi, Lupardus reported lower back pain radiating down both legs, numbness, and weakness.  However, Dr. Salahi's examination showed full 5/5 motor strength.  Then, in January 2013, Lupardus reported to Dr. Hofmann that she was no longer using the walker and was benefiting from the prescribed medication and able to take less of it.  As the ALJ concluded, the improvement in Lupardus's medical condition was related to her ability to work because her residual functional capacity to do basic work activities increased.  *See* 20 C.F.R. § 404.1594(b)(3), (c)(2), (c)(3)(ii).

In short, the treating physician's notes supported a conclusion that any disability had ceased.  We are not persuaded by Lupardus's argument that the ALJ

7

erred by assigning less weight to certain other portions of Dr. Hofmann's opinions. In particular, the ALJ rejected Dr. Hofmann's opinion dated in April 2012, in which Dr. Hofmann opined that Lupardus would have to alternate between sitting and standing. Also at issue is a medical source statement dated July 12, 2013, in which Dr. Hoffman indicates that Lupardus had severe functional limitations due to her back pain.

When evaluating the medical opinion evidence, the ALJ must give the opinion of a treating physician "substantial or considerable weight" unless there is good cause not to do so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted); 20 C.F.R. § 404.1527(c)(2) (stating that the opinion of a treating physician will be given controlling weight if it is supported by medically acceptable and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record). We have nevertheless concluded that good cause exists for affording less weight to a treating physician's opinion when: "(1) [that] opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). If the ALJ chooses to assign less weight to a treating physician's opinion, however, he must clearly articulate his reasons for doing so. *Id.*

On this record, substantial evidence supports the weight the ALJ assigned to Dr. Hofmann's opinions.  The ALJ articulated good cause for assigning less weight to certain portions of Dr. Hofmann's opinions because they were inconsistent with the evidence in the record, including his own treatment notes.[2]  Although Dr. Hofmann opined on April 3, 2012 that Lupardus would have to alternate between sitting and standing, he also stated on that very same day that based on the inconsistencies observed in physical therapy, it was "very possible that [Lupardus] is capable of greater activity."  As to Dr. Hofmann's July 2013 opinion that Lupardus had severe functional limitations that were perhaps more limited than previously reported, as early as January 2013, Lupardus had reported to Dr. Hofmann that she had some decrease in pain following a steroid injection, that she could tolerate sitting 40 to 50 minutes at a time, and that she avoided using her walker and only had to use the back brace during sustained activity.  Dr. Hofmann's examination revealed that Lupardus could ambulate without a back

---

[2]  Notably, the ALJ's determination that Lupardus had the residual functional capacity to do a range of sedentary work with some restrictions was not entirely inconsistent with Dr. Hofmann's opinion, as the doctor opined that Lupardus could not lift more than ten pounds and that she could stand or walk less than two hours in an eight-hour day.  *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) (indicating that although sedentary work occasionally requires being on one's feet, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").   Further, the vocational expert testified at the hearing that Lupardus's past relevant work as a telephone customer service representative and as an office manager had a sit/stand option.

brace or walker with some upper body support and that she had no focal motor or sensory deficits in the lower extremities.  A subsequent examination in June 2013 showed that Lupardus could ambulate slowly without her walker and, although she exhibited weakness in her lower extremities, no focal numbness was present.  Thus, substantial evidence supported the good cause articulated by the ALJ for rejecting certain portions of Dr. Hofmann's opinions.

Accordingly, we conclude that substantial evidence supports the ALJ's determination that Lupardus experienced medical improvement related to her ability to work as of April 2, 2012.

## C.    Appeals Council Review

Lupardus also argues that the Appeals Council erred by denying review because the new vocational rehabilitation evidence she submitted leads to the "inescapable conclusion" that she is disabled.

Typically, a claimant may present new evidence at every stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  Although the Appeals Council may decline to review the ALJ's denial of benefits, it "must consider new, material, and chronologically relevant evidence," submitted by the claimant.  *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quotations omitted).  When a claimant properly submits new evidence to the Appeals Council, "a reviewing

court must consider whether the new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Along with her request for review to the Appeals Council, Lupardus submitted a vocational services evaluation dated on November 21, 2013—approximately three months after the ALJ's decision—from Richard Grissinger, a vocational evaluator with Vocational Services of Northeast Florida, Inc. In his report, Grissinger noted that Lupardus presented with poor balance and a diminished ability to sit and stand. Grissinger concluded that Lupardus was unable to return to her former employment and was not able to work part-time or full-time. The Appeals Council denied Lupardus's request for review, stating that it considered the new evidence Lupardus submitted, but had determined that this evidence did not provide a basis for changing the ALJ's decision.

We conclude the Appeals Council did not err by denying Lupardus's request for review because the vocational services evaluation does not render the Commissioner's denial of benefits erroneous.[3] *See Ingram*, 496 F.3d at 1262. As a vocational evaluator, Grissinger does not constitute an acceptable medical

---

[3] We note that it is also questionable whether the vocational services evaluation is chronologically relevant because it was issued three months after the ALJ's decision and does not appear to relate back to the decision. *See* 20 C.F.R. § 404.970(a) (2016) (indicating that evidence is chronologically relevant where it "relates to the period on or before the date of the administrative law judge hearing decision."); *Washington*, 806 F.3d at 1322–23 (concluding that a medical examination that takes place after the ALJ's decision may be chronologically relevant if it relates back to the date of the ALJ's decision).

source, and therefore his opinion cannot be used to show the existence of an impairment. *See* 20 C.F.R. § 404.1513(a) (2016)[4] (explaining that an acceptable medical source includes, among others, licensed physicians, psychologists, and optometrists); *Cf. Crawford*, 363 F.3d at 1160 (concluding that a chiropractor's opinion could not be used to establish the existence of an impairment because a chiropractor is not an acceptable medical source). *But see* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5–6 (S.S.A. Aug. 9, 2006) (the opinion of a non-medical source should be considered, but the weight assigned to that opinion is dependent on a number of factors, including whether the opinion is consistent with the record).

Grissinger evaluated Lupardus based on testing related to her aptitude for various occupations, academic achievement, and intellectual functioning. He did not evaluate Lupardus's medical condition and his observations of Lupardus's condition appear to be based on her subjective complaints. *Cf. Crawford*, 363 F.3d at 1159 (discounting treating physician's opinion in part because it was based on subjective complaints). Further, Grissinger's statement that Lupardus could not work is a finding reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) (explaining that the finding of whether the claimant is disabled is reserved for the Commissioner). Grissinger's evaluation therefore did not provide a basis for

---

[4] Effective March 27, 2017, this regulation was renumbered as 20 C.F.R. § 404.1502(a). *See* 20 C.F.R. § 1502(a) (2017).

12

changing the ALJ's decision that Lupardus experienced medical improvement as of April 2, 2012. Accordingly, the Appeals Council did not err by denying Lupardus's request for review.

## III.   CONCLUSION

For the foregoing reasons, the magistrate judge's order affirming the Commissioner's decision that Lupardus was entitled to only a closed period of disability is **AFFIRMED**.