[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15733
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00317-MRM


MICHAEL LINDSEY,

                                                          Plaintiff-Appellant,

versus


COMMISSIONER OF SOCIAL SECURITY,

                                                          Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 10, 2018)

Before FAY, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Michael Lindsey appeals the district court's order affirming the Commissioner of the Social Security's ("the Commissioner") denial of his application for Supplemental Security Insurance ("SSI"), pursuant to 42 U.S.C. § 405(g), and denying his request for a remand to consider new evidence.[1] We affirm.

## I. BACKGROUND

Lindsey applied for SSI on April 5, 2013, alleging that he had become disabled on August 1, 1988, due to bipolar disorder, mood disorder, and leg deformities.[2] He later amended the alleged onset date to April 5, 2013, "to match the SSI application date." The Social Security Administration ("SSA") denied his claims initially and upon reconsideration. At Lindsey's request, a hearing was held before an Administrative Law Judge ("ALJ").

On December 22, 2015, after considering the medical evidence and testimony from Lindsey, one of his case managers, and a vocational expert, the ALJ denied Lindsey's SSI application. The ALJ determined that Lindsey had not engaged in substantial gainful activity since April 5, 2013, and that he had severe

---

[1] Both parties consented to final disposition by a magistrate judge pursuant to 28 U.S.C. § 636(c). For ease of reference, and because the decision was issued at the district court level, this opinion refers to the decision as being by the "district court," rather than by the magistrate judge specifically.

[2] Lindsey also applied for disability insurance benefits ("DIB") on April 5, 2013; however, he did not challenge the denial of DIB before the Administrative Law Judge, Appeals Council, or district court. He also does not raise on appeal any issues related to his application for DIB.

impairments, including hypertension, degenerative disc disease of the lumbar spine, mood disorder, anxiety disorder, impulse control disorder, and cannabis use disorder.  The ALJ determined that Lindsey did not have an impairment or combination of impairments that met or medically equaled the severity of those listed in 20 C.F.R. Part 404, subpart P, Appendix 1.

With regard to Lindsey's mental impairments, the ALJ stated that Lindsey did not meet the Paragraph B criteria because: (1) he had only mild restrictions in his daily living activities, as he was able to prepare his own meals, attend church frequently, and leave the group home where he lived unattended; (2) he had only moderate difficulties in social functioning, as he periodically had difficulties with others in his group home, was characterized as "informative, pleasant, and cooperative," and had a history of legal struggles and incarceration stemming from a violent attack on his ex-wife; (3) he had only moderate difficulties with concentration, persistence, or pace, as treatment notes indicated that he had "good attention and concentration, with no memory problems"; and (4) he had not experienced any episodes of decompensation of extended duration.

After considering the functional effects of Lindsey's impairments, the ALJ determined that he had the residual functional capacity ("RFC") to perform a range of light work with only occasional climbing of ladders, ropes, and scaffolds, and no workplace hazards such as unprotected heights or dangerous, moving

machinery.  The ALJ also included that Lindsey is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks.  Additionally, the ALJ determined that Lindsey cannot perform work requiring a high-quota production-rate pace, that he can make judgments on simple work, that he should have a routine work setting that is repetitive from day to day, that he occasionally can have interactions with the public and co-workers, and that he should not work in a team or in tandem.

With regard to Lindsey's mental impairments, the ALJ stated that Lindsey had been involuntarily committed to inpatient hospitalization for significant anxiety and suicidal ideation shortly before the alleged onset date.  The ALJ noted that treatment notes from his group home indicated that Lindsey reported receiving a bill that had triggered an anxiety attack.  The ALJ stated that, after the alleged onset date, medical evidence indicated that Lindsey's symptoms "relented," he was compliant with his medication, clinically stable, and did not require intensive or inpatient treatment.  Nonetheless, the ALJ stated that Lindsey's mental limitations were "plain," and that she had accommodated for those limitations in the RFC.

The ALJ stated that she gave great weight to Dr. Yamir Laboy's opinion that Lindsey did not face "more than moderate" mental and social limitations.  She also stated that she gave little weight to the opinions of Lindsey's case managers that he was not capable of maintaining employment due to his mental impairments, as they

4

were not acceptable medical sources and their statements were "extreme and at odds with the preponderance of evidence in this case." The ALJ stated that she gave little weight to Nurse Ann Hart's opinions, as Hart was not an acceptable medical source and her assessments were "extreme" and "unjustified by the preponderance of evidence in this case." The ALJ also stated that she considered Lindsey's numerous Global Assessment of Functioning scores as opinion evidence and afforded them partial weight.

The ALJ determined that, based on the vocational expert's testimony, Lindsey was capable of working as a tag inserter, garment sorter, and labeler; thus, he was not disabled. On April 6, 2016, the Appeals Council denied Lindsey's request for review.

Lindsey filed a complaint in the district court, challenging the Commissioner's denial of SSI. In June 2017, while his case was pending before the district court, Lindsey moved for a sentence-six remand—allowing the district court to retain jurisdiction and enter judgment after the remand proceedings are completed[3]—based on new, material, and chronologically relevant evidence that became known to him only after a subsequent favorable decision that found him

---

[3] 42 U.S.C. § 405(g).

disabled as of April 1, 2016, the first date of the month in which his second SSI application was filed.[4]

Lindsey stated that, "[u]pon learning of [his] subsequent favorable decision," he twice requested the evidence underlying the SSA's subsequent favorable decision from the state agency's field office; however, the state agency was unresponsive to his requests and he was only able to obtain the evidence after asking the SSA Regional Counsel's office for help. He asserted that the evidence was: (1) new because it was not part of the administrative record below; and (2) material because "there existed a reasonable possibility that [he] would have been found disabled" if the ALJ considered the newly discovered opinion of Dr. John Pappas from January 13, 2016. He specifically argued that Dr. Pappas's opinion was chronologically relevant because it stated that his mental disorders and symptoms dated back 10 to 12 years and that he had good cause for failing to submit the new evidence at the administrative level because "this evidence did not exist previously." He attached evidence dating from November 4, 2015, through January 31, 2017.

The district court denied Lindsey's motion to remand. The court determined that Lindsey did not show good cause for failing to submit the records for

---

[4] Lindsey noted that he had filed his second SSI application after the Appeals Council denied review on his first application because SSA rules prohibited a subsequent application before then.

November 4, 2015, through February 18, 2016, all of which pre-dated the Appeals Council's decision. The court reasoned that Lindsey had argued only that the records had not been sent to counsel, but that Lindsey himself was clearly aware of the additional records based on having visited the treatment sources during the relevant times, and that the failure to obtain and submit the records was "an oversight on Plaintiff's counsel's part."

In contrast, the district court determined that Lindsey had shown good cause for failing to submit the April 21, 2016, through January 2017 records, as those records did not exist before the Appeals Council denied review. Nonetheless, the district court determined that those records were not chronologically relevant because they were relevant only to whether Lindsey's condition deteriorated after the ALJ's decision and not probative of Lindsey's condition up to the date of the ALJ's decision in December 2015s. Thus, the district court determined that Lindsey had failed to establish that those documents were "material, relevant, and probative such that they would change the administrative result in this case."

## II. DISCUSSION

On appeal, Lindsey argues that the district court erred in failing to order a sentence-six remand for the Commissioner to consider the newly-submitted evidence. We review de novo a district court's determination of whether a remand to consider new evidence is necessary. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d

1214, 1218 (11th Cir. 2001).  A legal claim or argument that has not been briefed before us is abandoned.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

A court may remand a case to the SSA for consideration of newly discovered evidence pursuant to sentence six of 42 U.S.C. § 405(g).  *Hunter v. Soc. Sec. Admin.*, 808 F.3d 818, 821 (11th Cir. 2015).  To obtain a remand under sentence six

> the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level.

*Id.* (quotation omitted).  On the other hand, a claimant may seek a remand based on evidence that was properly before the Commissioner under sentence four of 42 U.S.C. § 405(g), if he shows that the decision to deny benefits was not supported by substantial evidence in the record as a whole based on the evidence that the Appeals Council did not adequately consider.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266-68 (11th Cir. 2007).

A subsequent favorable decision is not newly discovered evidence.  *Hunter*, 808 F.3d at 821 ("A decision is not evidence any more than evidence is a decision.").  Nonetheless, the evidence supporting a subsequent favorable decision may constitute new and material evidence under § 405(g).  *Id.* at 821-22.

8

The good cause requirement is satisfied when the evidence did not exist at the time of the administrative proceedings. *Vega*, 265 F.3d at 1218-19. In some cases, appellant may show good cause "even if the evidence was available to the applicant before the ALJ's decision." *Falge v. Apfel*, 150 F.3d 1320, 1323-24 (11th Cir. 1998). When the claimant gives no reason why he could not have obtained the evidence earlier, the good cause requirement is not satisfied. *Id.* at 1323 & n.8. An ALJ "has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, when the evidence in the record is sufficient to support the ALJ's determination, the ALJ does not have a duty to obtain additional medical evidence. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision); *cf. Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of . . . producing evidence in support of his claim.").

To be material, evidence must be both relevant and probative. *See Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1068 (11th Cir. 1994) (noting that the standard for remand requires, *inter alia*, that "the evidence is material, that is, relevant and probative"). For the evidence to be material there must be a reasonable possibility that it would change the administrative result. *Falge*, 150

F.3d at 1323.  The evidence also must be chronologically relevant, meaning it must relate to the period on or before the date of the ALJ's decision.  20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015) ("[T]he Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits." (quotation omitted)).

In *Washington*, we determined that the claimant's newly-submitted evidence—a physician's opinion that was based on an examination that was conducted several months after the ALJ's decision—was both chronologically relevant and material.  806 F.3d at 1319, 1321-23.  The physician's opinion was material because: (1) it could establish that the claimant had an impairment that met or equaled one of the listings; (2) the ALJ could credit the opinion over an inconsistent physician's opinion, as both opinions were based on independent examinations; and (3) the treatment notes were consistent with, and supported, the physician's opinion.  *Id.* at 1321-22.  Additionally, the physician's opinion related back to the period before the ALJ's decision, even though it was based on an examination conducted after the decision, because the physician also had based his opinions, in part, on the claimant's reports about symptoms throughout his life and medical records pre-dating the decision.  *Id.* at 1319, 1322.  We therefore held that

10

the Appeals Council committed legal error in refusing to consider the newly-submitted evidence. *Id.* at 1323.

In *Wilson*, we determined that a claimant's new evidence, a March 1996 physician's opinion that she met one of the Listings in 20 C.F.R. Part 404, subpart P, Appendix 1, which she had appended to her brief on appeal, was irrelevant and not probative of any issue. 179 F.3d at 1278-79. We stated that, while the physician's opinion was relevant to whether the claimant's condition subsequently deteriorated, it was not relevant to the ALJ's March 1995 disability determination. *Id.* at 1279. We also stated that the ALJ did not violate his duty to fully and fairly develop the record by seeking an additional expert opinion, as the record already included several physicians' opinions sufficient to support a decision. *Id.* at 1278.

In *Hargress v. Social Security Administration*, we held that new evidence— consisting primarily of treatment notes for a period after an ALJ's decision—was not chronologically relevant. 883 F.3d 1302, 1309-10 (11th Cir. 2018). We distinguished *Washington*, noting that, although the claimant's new evidence included an opinion that her limitations pre-dated the ALJ's opinion, nothing indicated that the physician had (1) evaluated the claimant's past medical records in forming her opinion, or (2) treated the claimant during the relevant period. *Id.* at 1310. We also determined that the opinion was not material evidence, as it was inconsistent with the physician's treatment notes and the other medical records. *Id.*

11

As an initial matter, Lindsey's records from November 4, 2015, were before the ALJ when she made her decision, and, thus, are subject only to a sentence-four remand. *Ingram*, 496 F.3d at 1266-68. As Lindsey has not raised any argument for a sentence-four remand, any such claim is abandoned. *Access Now, Inc.*, 385 F.3d at 1330.

Lindsey's argument that the December 2015 through February 2016 records were nonexistent to him because he did not know of them before the Appeals Council denied his request for review is unavailing because: (1) he has not shown that those records did not actually exist before the Appeals Council's decision; and (2) as the district court stated, Lindsey knew that those records existed because he had visited the treating sources on those dates. *Vega*, 265 F.3d at 1218-19. Lindsey also has not demonstrated good cause by showing that he could not have obtained the records earlier. *Falge*, 150 F.3d at 1323 & n.8. Despite Lindsey's counsel's allegations that he had attempted to request the records earlier but the SSA did not comply with his requests, he has submitted no documents showing that he had attempted to obtain the records from the Commissioner or Lindsey's group home before the Appeals Council's decision.

Moreover, as the ALJ already had sufficient medical records before her to reach a conclusion on Lindsey's ability to work, the ALJ's duty to develop a full and fair record did not compel her to seek additional medical records or opinions.

*Wilson*, 179 F.3d at 1278; *Graham*, 129 F.3d at 1422; *cf. Ellison*, 355 F.3d at 1276. Thus, Lindsey has not carried his burden to show that he had good cause for failing to submit the December 2015 through February 2016 records before the Appeals Council denied his request for review on April 6, 2016.  *Hunter*, 808 F.3d at 821.

Furthermore, even if Lindsey had shown good cause, he has not shown that the December 2015 through February 2016 records are material.  *Id.*  First, the treatment notes from then do not show a reasonable possibility that the ALJ's decision would change because they indicate that Lindsey was clinically stable and medication-compliant during that period.  *Falge*, 150 F.3d at 1323; *Keeton*, 21 F.3d at 1068.  Second, Dr. Pappas's January 2016 opinion also does not show a reasonable possibility that the ALJ's decision would change because he indicated that Lindsey retained the ability to perform simple manual labor and was able to manage his psychotic symptoms through medication.  *Keeton*, 21 F.3d at 1068. Further, it is not clear that Dr. Pappas's opinion is chronologically relevant because he never indicated that he reviewed or relied on Lindsey's prior medical records in forming his opinion, other than stating Lindsey's conditions had lasted 10 to 12 years.  *Hargress*, 883 F.3d at 1310; *Washington*, 806 F.3d at 1319, 1322.

The district court also did not err in determining that Lindsey's newly-discovered records from April 2016 through January 2017 were not material. *Hunter*, 808 F.3d at 821; *Keeton*, 21 F.3d at 1068.  First, none of the records from

13

April 2016 to January 2017 are chronologically relevant, as they relate only to Lindsey's treatment after the ALJ's decision and do not change the picture of what his symptomology was like before the ALJ's decision. *Hargress*, 883 F.3d 1309-10; *Washington*, 806 F.3d at 1320; 20 C.F.R. §§ 404.970(b), 416.1470(b). The records merely show that Lindsey suffered several episodes of decompression requiring extended periods of hospitalization *after* the ALJ's decision. *Wilson*, 179 F.3d at 1279. Second, Dr. Rodolfo Reni's opinion in the "supplemental mental impairment questionnaire" is not chronologically relevant, as nothing in the record indicates that: (1) Dr. Reni relied on Lindsey's prior medical records; or (2) Dr. Reni treated Lindsey during the relevant period. *Hargress*, 883 F.3d at 1309-10.

**AFFIRMED.**