[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16877
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-02234-RDP

HEATHER YATES,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 24, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Appellant Heather Yates appeals the district court's order affirming the Administrative Law Judge's ("ALJ") decision denying her applications for disability insurance benefits and supplemental security income. On appeal, Yates challenges the weight the ALJ assigned to the opinion of her treating physician. She also argues that the ALJ posed an improper hypothetical to the vocational expert. Finally, she argues that the Appeals Council erred by declining to review the additional evidence she submitted. After careful review, we affirm.

## I.    BACKGROUND

In 2012, Yates filed an application for disability insurance benefits and supplemental security income with the Social Security Administration. Alleging a disability onset date of October 9, 2009,[1] she represented that she was disabled and unable to work due to depression, vision loss, cysts, and back pain. The Commissioner of Social Security ("the Commissioner") denied her applications.

At a subsequent hearing before the ALJ, Yates testified that she was 28 years old and had three children ages 2, 4, and 6. She does not drive, though no doctor had restricted her driving. She had previously worked part-time at McDonald's but was fired because she experienced headaches and migraines and had difficulty remembering things. She had also worked part-time for Manpower as a material handler but had to stop that job because the headaches got really bad.

---

[1] Yates initially stated that her onset date was April 1, 2009, but she later amended it to October 9, 2009.

She gets headaches two or three times per week and they last for four hours at a time. She testified that she had a disc bulge in her back, which prevented her from sitting for long periods of time. One of Yates's neighbors helps her take care of her two youngest children and assists with cooking and grocery shopping. However, Yates stated that she gets the four-year-old ready for daycare, feeds her youngest child, and does some light housework, such as washing the dishes.

The ALJ also heard testimony from a vocational expert. The ALJ described an individual with Yates's age, education, and work experience, and who was limited to light work but could frequently climb stairs, balance, stoop, and kneel. The individual was also limited to simple tasks and could not climb ladders and should avoid concentrated exposure to extreme heat and cold. When asked whether there were any jobs in the economy that such an individual could perform, the vocational expert stated that an individual with those limitations could perform the jobs of a garment sorter, hand finisher, and a cashier.

Following the hearing, the ALJ issued a decision denying Yates's application for disability insurance benefits and supplemental security income. After reviewing the evidence, the ALJ determined that Yates had the following severe impairments: mild lumbar disc bulging, a cerebral cyst, headaches, a depressive disorder with anxiety, and borderline intellectual functioning. However, Yates did not have an impairment or combination of impairments that

3

met or equaled one the listed impairments in the social security regulations. The ALJ next determined that Yates had the residual functional capacity to perform light work, except that she was limited to simple tasks and could have frequent interaction with co-workers. She also had the following additional restrictions: unable to climb ladders; only occasionally able to climb ramps and stairs; and required limited exposure to unprotected heights and temperature extremes.

Based on that finding, and in conjunction with the testimony from the vocational expert that an individual with Yates's limitations could perform the jobs of a garment sorter, hand finisher, and cashier, the ALJ concluded that jobs existed in the economy in significant numbers that Yates could perform. Accordingly, the ALJ determined that Yates was not disabled and denied her applications for disability insurance benefits and supplemental security income.

Yates thereafter sought review with the Appeals Council. She also submitted additional evidence, including treatment records from January and October 2014. The Appeals Council denied her request for review. In doing so, the Appeals Council stated that the record did not provide a basis for changing the ALJ's decision. Although the Appeals Council considered the January 2014 treatment note, it declined to consider the treatment note from October 2014 because it was dated after the ALJ's May 2014 decision and did not affect the ALJ's decision about whether Yates was disabled prior to May 2014.

In December 2015, Yates filed a complaint in district court.  She argued in relevant part that (1) the ALJ failed to assign appropriate weight to the opinion of her treating physician, (2) the ALJ failed to consider her migraine headaches and include them in the hypothetical to the vocational expert, and (3) the Appeals Council erred by declining to consider her October 2014 treatment note.  The district court affirmed the ALJ's denial of disability insurance benefits and supplemental security income.  This appeal followed.

## II.    DISCUSSION

### A.    General Principles

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted).  We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

To determine whether a claimant is disabled, the ALJ must complete a five-step sequential evaluation process.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant has the burden to prove that (1) she "has not engaged in

5

substantial gainful activity," (2) she "has a severe impairment or combination of impairments," and (3) her "impairment or combination of impairments meets or equals a listed impairment" such that she is entitled to an automatic finding of disability. *Id.* If the claimant is not able to meet or equal the criteria for a listed impairment, she must proceed to the fourth step, which requires showing that she is unable to do her past relevant work. *Id.* "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must show that she is unable to perform those jobs in order to establish that she is disabled. *Id.*

### B.    Weight Assigned to Opinion of Yates's Treating Physician

Yates argues that the ALJ assigned improper weight to the opinion of her treating physician, Dr. Stacy Towles-Moore. When evaluating the medical opinion evidence, the ALJ must give the opinion of a treating physician "substantial or considerable weight" unless there is good cause not to do so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted); 20 C.F.R. § 404.1527(c)(2) (stating that the opinion of a treating physician will be given controlling weight if it is supported by medically acceptable and laboratory

6

diagnostic techniques and is not inconsistent with the other substantial evidence in the record).

We have nevertheless concluded that good cause exists for affording less weight to a treating physician's opinion when: "(1) [that] opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). If the ALJ chooses to assign less weight to a treating physician's opinion, however, he must clearly articulate his reasons for doing so. *Id.*

In January 2014, Dr. Towles-Moore, a physician at Quality of Life Health, completed a physical capacities form in which she opined that Yates could sit for one hour at a time, stand for 30 minutes at a time, and walk for 30 minutes at a time, but needed to lie down 3 hours per day. Dr. Towles-Moore did not know if these limitations were present in April 2009—the initial alleged disability onset date—and further opined that Yates would need to take a break after two hours of work. Dr. Towles-Moore did not provide any indication as to which impairments her opinion was based upon. The ALJ assigned minimal weight to Dr. Towles-Moore's opinion, concluding that it was inconsistent with the objective medical evidence and with the other records from Quality of Life Health.

7

We conclude that substantial evidence supports the ALJ's articulation of good cause for assigning minimal weight to limitations noted in Dr. Towles-Moore's opinion. First, Dr. Towles-Moore's own treatment notes do not support the severe limitations set forth in her opinion. Although Yates had received treatment from Quality of Life Health since 2005, she was not seen by Dr. Towles-Moore until 2012. In a treatment note from August 2012, Dr. Towles-Moore noted that Yates was positive for back pain, joint pain, muscle weakness, and recurrent headaches. However, her review of the musculoskeletal system showed only moderate pain, a full range of motion, and no joint deformity, heat, swelling, or erythema. Yates returned to Quality of Life Health for her migraines and a prescription refill in June 2013, but during that visit Yates reported her pain as a zero out of ten on the pain scale. Then in September 2013, Yates sought treatment for her headaches and a prescription refill. Other than noting the reason for Yates's visit, Dr. Towles-Moore did not say anything further about her headaches and a review of Yates's musculoskeletal system showed that Yates had no pain and a normal range of motion, muscle strength, and stability. In short, the existence of extreme limitations, as later opined by Dr. Towles-Moore, are not supported by these treatment notes.

The ALJ's decision to give little weight to Dr. Towles-Moore's opinion is also supported by the other evidence in the record. As to Yates's back pain, a

November 2009 lumbar spine x-ray showed a disc bulge but no significant abnormality. A CT scan that same month was "unremarkable" and showed no evidence of concurrent herniation. A treatment note from the Northeast Orthopedic Clinic in January 2010 indicated that Yates did not have any disc rupture and her disc injury had "obviously spontaneously repaired itself." As to Yates's depression, in September 2011, March 2012, and May 2012, treatment notes show that her depression was improving and/or controlled by medication.

Dr. Towles-Moore's opinion also conflicted with Yates's own description of her daily activities. In an adult function report, Yates indicated that she prepares meals daily, plays games with her kids, and does some shopping and housework. Further, in a consultative mental examination with Dr. Jack Bentley, Yates reported that she attends church, enjoys reading, cares for her children, and completes activities of daily living without assistance. And although Yates testified at the administrative hearing that she receives a lot of assistance from her neighbor, she stated that she helps care for her children, gets her four-year-old daughter ready for daycare, helps her children write letters and read books, and assists with the grocery shopping.

Yates's argument that Dr. Towles-Moore's opinion is supported by the evidence related to her cyst and migraines is unpersuasive. Again, Dr. Towles-Moore's opinion did not specify that any limitations she discerned were

9

attributable to Yates's cyst and migraines.  Indeed, she did not even indicate which impairments were responsible for the opined limitations.  Dr. Towles-Moore also could not state whether Yates's limitations were present in April 2009.[2]  Further, although Dr. Towles-Moore treated Yates for her migraines and provided a prescription refill in June 2013, Yates reported that her pain was a zero out of ten on that visit.

Nevertheless, even if Dr. Towles-Moore's opinion was based on Yates's cyst and migraines, the medical evidence did not support the limitations described by Dr. Towles-Moore.  In particular, an MRI in February 2012 revealed an arachnoid cyst measuring four centimeters but noted that there were no significant intracranial or focal acute abnormalities and only "minor chronic mass effect without significant focal edema or acute process."  Though Yates visited the emergency room several times between May 2011 and June 2012 for her migraines, she was discharged each time in either stable or improved condition.  In fact, in October 2013 Yates reported that her migraines were improving, even though she could not always make it to see her neurologist.

Because good cause existed for discounting Dr. Towles-Moore's opinion, substantial evidence supports the ALJ's decision to assign that opinion less weight. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (2015) ("We will not

---

[2]  The record does contain a CT scan from September 2005, showing a large cyst on the left side of Yates's brain.

second guess the ALJ about the weight assigned the treating physician's opinion deserves so long as he articulates a special justification for it.").

### C.    Vocational Expert Hypothetical

Yates next argues that the hypothetical the ALJ posed to the vocational expert did not include any limitations related to her migraines, and therefore the ALJ's reliance on the vocational expert's testimony was improper and could not constitute substantial evidence.

Once a claimant demonstrates that she cannot perform her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that the claimant can perform. *See Jones*, 190 F.3d at 1228. Obtaining testimony from a vocational expert is the preferred means for introducing evidence that there are jobs in the economy that the claimant can perform. *Wilson*, 284 F.3d at 1227.

"In order for the [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quotations and citation omitted). A "hypothetical question[] adequately

11

account[s] for a claimant's limitations . . . when the question[] otherwise implicitly account[s] for the[] limitations." *Winschel*, 631 F.3d at 1180.

When questioning the vocational expert about whether jobs existed in the national economy that a hypothetical individual could perform, the ALJ posed the following hypothetical:

> Assume a hypothetical individual with the same age, education and work experience as [Yates], and that individual is limited to light work with frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling.

> The individual should never . . . climb ladders and scaffolds. The individual should never work in environments of unprotected heights or hazardous moving mechanical parts.

> And should avoid concentrated exposure to extreme cold and extreme heat. The individual is limited to simple tasks, and frequent, brief interaction with supervisors and coworkers.

The vocational expert stated that such an individual would not be able to perform any of Yates's past relevant work except as a fast-food worker, but that such an individual could work as a garment sorter, hand finisher, or cashier. Based on the vocational expert's testimony, the ALJ determined at step five that there were jobs in the economy that Yates could perform, and thus concluded that Yates was not disabled.

Here, the ALJ did not err by failing to include Yates's migraines in the hypothetical question. The ALJ did not find that the medical evidence supported Yates's assertions of completely disabling pain related to her migraines and thus to

12

any corresponding limitations. *See Crawford*, 363 F.3d at 1161 (concluding that the ALJ does not need to include findings in a hypothetical posed to the vocational expert if the ALJ correctly found those findings to be unsupported by the record evidence). Because the hypothetical question the ALJ posed to the vocational expert included the limitations provided in the ALJ's residual functional capacity determination, the ALJ's finding at step five that Yates was not disabled is supported by substantial evidence. *See id.*

### D.    Appeals Council Review

Finally, Yates argues that the Appeals Council erred by refusing to consider the new evidence she submitted without considering whether it was chronologically relevant.

Typically, a claimant may present new evidence at every stage of the administrative process. *Ingram*, 496 F.3d at 1261. Although the Appeals Council may decline to review the ALJ's denial of benefits, it "must consider new, material, and chronologically relevant evidence" submitted by the claimant. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quotations omitted); 20 C.F.R. § 404.970(b) (2016).[3] The issue of whether a claimant's evidence is new, material, and chronologically relevant is reviewed *de*

---

[3] This regulation was recently amended, effective January 17, 2017, to state that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (2017).

13

*novo*. *Washington*, 806 F.3d at 1320–21. "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* at 1321.

Evidence is chronologically relevant where "it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) (2016). A medical examination that takes place after issuance of the ALJ's decision may be chronologically relevant if it relates back to the date of the ALJ's decision. *See Washington*, 806 F.3d at 1322–23.

In submitting her request for review to the Appeals Council, Yates submitted an October 2014 treatment note in which she reported to Dr. Olga Bogdanova that her headaches were getting worse and that she believed her cyst was growing because a recent CT scan had shown that it was five centimeters. Dr. Bogdanova ordered an MRI to determine the size of the cyst. The Appeals Council denied Yates's request for review.

Here, Yates's argument that the Appeals Council erred by not considering whether her new evidence from October 2014 was chronologically relevant is unavailing. The Appeals Council stated that it had looked at the evidence but determined that it did not affect the ALJ's decision because it was from a later date. Although the Appeals Council did not explicitly state that the additional medical evidence was not chronologically relevant, it implicitly did so and we

14

agree with that conclusion.  Dr. Bogdanova's October 2014 treatment note was dated after the ALJ's May 2014 decision.  Although the treatment note mentioned that Yates was returning for a follow-up visit from January 2014, Dr. Bogdanova did not state that her opinion applied to the time period before the ALJ's decision. *Cf. Washington*, 806 F.3d at 1322–23 (concluding that a medical opinion based on treatment occurring after the ALJ's decision was chronologically relevant because it was based in part on a review of the claimant's medical records from the time period prior to the ALJ's decision).  Instead, Dr. Bogdanova discussed the symptoms Yates was currently experiencing, as well as Yates's belief that her cyst was growing due to a recent CT scan that showed her cyst was five centimeters.[4] Because the new evidence did not relate back to the period before the ALJ's decision, the ALJ did not err by determining that the October 2014 treatment note was not chronologically relevant.  *See Washington*, 806 F.3d at 1322–23.

But regardless, even if the October 2014 treatment note were chronologically relevant, it is not material.  *See id.* at 1321 (explaining that evidence is material if "there is a reasonable possibility that [it] would change the administrative result" (quotations omitted)).  The treatment note merely reiterates that Yates suffers from a brain cyst and migraines—diagnoses of which the ALJ was aware—and although Yates reported that she feared her cyst was growing, Dr.

---

[4] It seems that Yates reported to Dr. Bogdanova that a recent CT scan had shown that her cyst was five centimeters; this CT scan does not appear to be included in the record.

Bogdanova did not express any opinion in that regard but instead ordered a new MRI.  Thus, this treatment note does not create a reasonable possibility that it would change the administrative result.  In short, the Appeals Council did not err by refusing to consider the new evidence Yates submitted because, even if it was chronologically relevant, it was not material.

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's order affirming the Commissioner's denial of Yates's applications for disability insurance benefits and supplemental security income.

**AFFIRMED.**