[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10842

Non-Argument Calendar

_____

NICHOLAS ALLEN GOBLE,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:21-cv-00149-CLS

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Nicholas Goble appeals the district court's order affirming the Social Security Administration's ("SSA") denial of his claim for Social Security disability benefits.  To summarize Goble's case to this point: (1) Goble applied for disability insurance benefits, indicating that his disability began July 11, 2018, (2) the SSA denied his application, concluding that he did not meet the definition of disabled under the SSA's rules, (3) Goble requested a hearing before an administrative law judge ("ALJ"), (4) the ALJ determined that Goble was not disabled and entered an unfavorable decision, (5) Goble sought review of the ALJ's decision from the SSA's Appeals Council and provided new evidence, (6) the Appeals Council denied Goble's request for review,[1] (7) Goble appealed to the United States District Court for the Northern District of Alabama, and (8) the district court affirmed the decisions below.

On appeal to this Court, Goble argues that (1) the Appeals Council erred in denying review of the ALJ's decision on the ground that the additional evidence he brought forth did not have a reasonable probability of changing the outcome of the ALJ's

---

[1] Once the Appeals Council denied review, "the [ALJ's] decision [became] the final decision of the Commissioner of Social Security." *See generally Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) ("When . . . the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision.").

decision and (2) the Commissioner's decision was not based on substantial evidence.  After review, we affirm.

## I.    Background

### A.  Goble's Relevant Medical History

In 2018, Goble applied for disability insurance benefits, asserting that he was 35 years old, had completed high school, and was unable to work due to ten conditions: "Diabetes 1 & 2, Arthritis, [Severe] Anxiety, Depression, afib tachycardia, colitis, peripheral neuropathy, [autonomic] neuropathy, epilepsy, [and] migraines."[2] He asserted that he stopped working on July 11, 2018 due to these conditions.[3]  He indicated that he had prior work

---

[2] Goble also referenced the following additional impairments in subsequent filings and proceedings related to his disability claim: carpal tunnel in both hands, chronic knee pain, congestive heart failure, diabetic neuropathy, dysautonomia-like syndrome, gastroesophageal reflux disease, gastroparesis, hypoglycemia, insomnia, a meniscus tear (left knee), a pinched nerve, and obesity.

[3] Goble's mother, Rebecca Nelson, filled out a function report on Goble's behalf.  Nelson indicated that Goble took care of three children by doing "laundry [and] helping them with meals" and took care of a dog by feeding and "walking [it] outside."  Nelson also indicated that she helped Goble on a daily basis and his grandparents also helped care for the children in various ways—by picking them up for school and running any necessary errands. Finally, Nelson indicated that most physical activities are off-limits for Goble because they would cause a spike in his heart rate that could cause him to black out.

4                    Opinion of the Court                    22-10842

experience as a floor finisher, skilled painter, and paint sales representative.

Goble provided numerous medical records in support of his application.[4]   These records establish that Goble had colitis, hypothyroidism, hypertensive heart disease, hyperlipidemia, tachycardia,[5] chronic diastolic (congestive) heart failure, type 2 diabetes mellitus, and recurrent episodes of hypoglycemia.

In 2010, Goble had surgeries for (1) carpal tunnel, (2) a left wrist fracture,[6] and (3) a meniscal tear in his right knee.  Despite the knee surgery, Goble had recurring knee pain and reported significant difficulties walking in 2014, and he underwent another knee surgery in April 2014.  During a post-surgical follow-up visit, Goble's doctor found no swelling in the right knee and reported Goble had full range of motion.  In 2017, Goble suffered a meniscal tear in his left knee and underwent surgery.  In 2019, Goble cut himself with a knife and injured a nerve in his left hand.  An orthopedist put him in a splint, noting that he did not recommend

---

[4] There are 52 medical records in the record on appeal.  We focus only on the conditions critical to this appeal—taking direction from the medical events and records that Goble highlights in his brief.

[5] From 2012 to 2019, Goble had multiple electrocardiograms ("EKGs") which were occasionally abnormal.

[6] In connection with this surgery, Goble asserts that one of his severe impairments is status-post ORIF of his left wrist.  ORIF stands for open reduction and internal fixation which refers to the type of surgery that Goble underwent.

any surgical intervention, that Goble had "excellent function and flexor tendons [were] spared," and that Goble could "go about his activities as tolerated."

From August 2016 to January 2019, Goble saw endocrinologist Dr. Robert Chadband several times for diabetes-related medical care. Dr. Chadband diagnosed Goble with morbid obesity, type 2 diabetes mellitus with neuropathy, hypothyroidism, and hypertension. By February 2017, Goble—by his own admission—was "doing much better" with his diabetes-related health issues. In May 2017, Goble returned because he had had a seizure caused by low blood sugar. Goble "[felt] better with the [insulin] pump and the sensor" for his diabetes by his October 2017 follow-up appointment. In July 2018, Goble was in a car accident when he ran off the road due to a low blood sugar reaction, and Dr. Chadband referred him for an insulin pump sensor. Goble received a new sensor and, at a follow-up visit in September 2018, Dr. Chadband reported Goble was "doing well" and "better with current doctors and plans." In March 2020, at a follow-up, Dr. Chadband noted that Goble was "doing well at present" and that Goble should continue on his medications and follow up with his doctors as planned.

In March 2017, Goble saw neurologist Dr. Richard Diethelm because Goble "had a recent seizure and [a] migraine." Dr. Diethelm discussed a "migraine treatment plan" with Goble, put him on a seizure medication, and performed "[b]ilateral trapezius trigger point injections" to reduce the pain and provide a

therapeutic effect.  Because of Goble's reported seizure, Dr. Diethelm ordered electroencephalogram ("EEG") and magnetic resonance imaging ("MRI") exams.  Both test results were normal and did not show any brain abnormalities.[7]  At a follow-up appointment in February 2018, Goble reported "no recurrent seizures" and a reduction in his migraine frequency, although he still suffered from migraines.[8]  Following Goble's July 2018 car accident, Dr. Diethelm increased the dosage of Goble's seizure medication.  A few weeks later, Dr. Diethelm changed the seizure medication.  In April 2020, during one of Goble's return visits, Dr. Diethelm noted that "[Goble] has had no seizure" and Goble "[was] doing much better."  During that visit, a physical exam showed no focal motor or sensory deficits and Goble's "gait [was] steady."  At that time, Dr. Diethelm instructed Goble to stop taking his anxiety medication (Klonopin).  However, the progress notes indicated that he restarted the medication in May 2020, because his anxiety got "worse after stopping" the medication.

Goble visited Dr. Mohammed Shubair (a pulmonologist) in October 2019, complaining of asthma, chronic bronchitis, and sleep

[7] In April and May 2017, Goble visited the hospital twice for syncopal symptoms.  At the first visit, he had collapsed at home, lost consciousness, and hit his head.  At the second visit, his son had come home to find him seizing.  The seizure was attributed to an episode of hypoglycemia.

[8] From May to July 2018, Goble visited the hospital multiple times complaining of headaches, dizziness, and syncopal events.  During these visits, two CT scans were taken of Goble's head, but neither showed any abnormalities.

apnea.  Dr. Shubair ordered a pulmonary function test and a sleep study.  The results of the pulmonary function test showed that Goble had (1) "[n]ormal spirometry, however, there is significant improvement after bronchodilator therapy," (2) "lung volumes with evidence of [mild] obesity related reduction in residual volume," and (3) "normal diffusion capacity."  Following the sleep study, Dr. Shubair diagnosed Goble with sleep apnea and insomnia.

In May 2020, Goble visited Dr. Shubair so Dr. Shubair could conduct a continuous positive airway pressure ("CPAP") compliance report.  Goble had started using a CPAP machine to sleep and reportedly was having "no problems with CPAP," "no problems with sleep maintenance," and his "sleep related symptoms ha[d] markedly improved" so that he was "wak[ing] up rested" without "excessive daytime sleepiness."

## B. The SSA and ALJ Denied Goble's Claim

The SSA denied Goble's claim for Social Security disability benefits because "[b]ased on a review of [his] health problems" he did not meet the SSA's definition of disabled.  The doctors that evaluated Goble's medical records for the SSA both determined that Goble had impairments, but those impairments were not severe enough to render Goble disabled.[9]  Dr. Holly Mussell

---

[9] Disability for these purposes is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted

determined that Goble had the following "medically determinable impairments": epilepsy; cardia dysrhythmias; essential hypertension; diabetes mellitus; dysfunction—major joints; disorders of autonomic nervous system; migraine[s]; depressive disorders; anxiety and obsessive-compulsive disorders.   The epilepsy, cardiac dysrhythmias, diabetes, and major joints dysfunction were all deemed severe medical impairments.   The others were deemed non-severe.  She further determined that the medically determinable impairments could be reasonably expected to produce some of Goble's alleged symptoms and functional limitations but that his allegations about the severity, persistence, and functionally limiting effects of the symptoms were not supported by the objective medical evidence.  She considered his allegations about the effects of the symptoms to be only "partially consistent" with the medical evidence.  She opined that he had certain physical exertional limitations, but was capable of performing light work.

Similarly, Dr. Robert Estock reviewed Goble's medical history and determined that he had certain exertional limitations (*i.e.*, Goble's limit for occasional lifting would be 20 pounds and his limit for standing and/or walking would be "about 6 hours in an 8-hour workday") as well as non-severe mental (psychiatric) impairments.

_____

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1).

22-10842                Opinion of the Court                9

Goble requested a hearing before an ALJ.  The ALJ held a telephonic hearing on Goble's claim.[10]  Goble was represented by counsel who argued that Goble "suffer[ed] from multiple impairments" including "diabetes, diabetic neuropathy, anxiety, chronic knee pain, epilepsy, migraines, gastroparesis, tachycardia, atrial fibrillation, dysautonomia-like syndrome, [and] insomnia." According to counsel, "[t]he combination of these impairments cause[d] symptoms that affect [Goble's] ability to maintain concentration, persistence, and pace to complete an eight-hour workday and 40-hour work week on a consistent basis."  Goble stated that he agreed with counsel's statement, and added that he had "some issues with [his] legs" including "neuropathy problems" and blood clots as well as "carpal tunnel in both hands," "a pinched nerve," "issues with [his lungs]," and "hypoglycemia unawareness."  He also testified that he could only sit for 10 minutes before needing to stand and could only stand for "[a]bout 15 minutes" before needing to sit down.  He testified that he could walk three minutes before needing to sit down, and that he would need to rest at least ten minutes before resuming walking again. Finally, he testified that he could lift at most five pounds on a frequent basis.[11]

---

[10] The hearing was conducted by telephone "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic."

[11] Goble stated that he was "guesstimating" for this answer.

The ALJ then examined a vocational expert ("VE"). The VE testified that Goble completed 12th grade and has held three semi-skilled jobs in the past (floor finisher, paint sales representative, and skilled painter). The ALJ gave the VE two hypotheticals to gauge which types of jobs an individual with specified restrictions would be able to perform. In the first hypothetical,[12] the individual had the age, education, and work history that Goble testified to, had

---

[12] The full hypothetical was:

> Hypothetical 1, assume this gentleman is of the age, education, and has the work history as [Goble] has testified. Assume I should find that the claimant has pain and impairment which would restrict his abilities, as follows.
>
> . . .
>
> Physically, that this gentleman does have exertional limitations. He can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. He can stand and/or walk six hours; sit six hours; pushing and pulling are unlimited, unless I indicate differently, as we go. There are no—he does have postural limitations. He can never climb ladders, ropes or scaffolding. Occasionally, he can do climbing ramps and stairs; balancing occasionally, stooping occasionally, kneeling occasionally, crouching occasionally, crawling occasionally. He has no manipulative limitations. He has no visual limitations. He has no communication limitations.
>
> He does have environmental limitations. Those would be as follows. Unlimited are the following: extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dust, gas, poor ventilation. As for hazards, machinery and heights, he should avoid concentrated exposure. No unprotected heights or bodies of water.

"pain and impairment" that would restrict his abilities so that he could only "occasionally lift and carry 20 pounds" and "frequently lift and carry 10 pounds," and could "stand and/or walk six hours [and] sit six hours," among other restrictions. The VE testified that such an individual would be able to return to his past work as a paint sales representative or perform alternate light work as a parking lot attendant, cashier, or laundry worker.[13] In the second hypothetical, the individual had the same age and work history as before but was more limited physically—

> [h]e [could not] do an eight-hour day, five days a week. He [could] stand 15 minutes; he [could] sit ten minutes. He [could] walk one minute. After he walk[ed] three minutes, he would have to sit and rest ten minutes, before he could walk three minutes again. He could frequently lift five pounds.

The VE testified that such an individual would not be able to do any work. Goble's counsel stated that he "believe[d] hypothetical number 2 accurately describe[d] [his] client," and he did not have any additional hypotheticals.

---

[13] The VE also testified that each of these jobs were widely available in the national economy.

The ALJ evaluated Goble's claim according to the SSA's five-step sequential evaluation[14] and ultimately determined that Goble was not disabled.

First, the ALJ determined that Goble had not engaged in substantial gainful activity since July 11, 2018 (the alleged onset date of Goble's disability).

Second, the ALJ concluded that Goble "ha[d] the following severe impairments: obesity, diabetes mellitus, epilepsy, congestive heart failure, peripheral neuropathy, tachycardia, status-post ORIF, [and a] left knee meniscus tear." Alongside these "severe" impairments, the ALJ concluded that some of Goble's impairments were "non-severe" (migraines, carpal tunnel syndrome, sleep apnea, and hypertension) because they were being successfully medically managed or would "not cause more than minimal limitation" to his ability to work (anxiety and depression). The ALJ determined that Goble had mild limitations in his abilities to understand, remember, or apply information; concentrate,

---

[14] The evaluation process involves the following five-step determinations: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether he "has a severe impairment or combination of impairments"; (3) if so, "whether th[at] impairment [or combination of impairments] meets or equals the severity of the specified impairments" in the regulations; (4) if not, "whether the claimant can perform any of his . . . past relevant work" in light of his residual functional capacity ("RFC"); and (5) if not, "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

persist or maintain pace; manage himself, and to interact with others.

Third, the ALJ assessed Goble's severe impairments and determined that they did not meet the severity of the specified impairments listed in the regulations.  Specifically, the ALJ explained that obesity is not a listed impairment, but that the functional limitations caused by obesity, alone or in combination with other impairments, could equal a listed impairment—but that it did not do so in Goble's case.  Diabetes mellitus was evaluated under listings for a variety of other body systems, but the evidence did not support a finding that Goble met or equaled the listing severity for any of the listed impairments.  Nevertheless, the ALJ stated that he considered the limiting effects of the diabetes as part of his RFC determination.  Similarly, Goble's epilepsy did not meet a listing because he did not meet the requirements for recurrent seizures within a particular time frame.  Goble's peripheral neuropathy, wrist (post-ORIF), and left knee meniscal tear impairments also did not satisfy a listing because they did not cause the necessary marked limitations in physical functioning.  Finally, Goble's heart issues did not meet the frequency and physical limitations requirements for the applicable listing.

Fourth, the ALJ concluded that Goble had a residual functional capacity ("RFC") to perform "light work" with certain limitations.  In sum, the ALJ found that Goble's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but "[Goble's] statements concerning the

intensity, persistence, and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." The ALJ noted that Goble's descriptions of his symptoms and limitations throughout the record had "generally been inconsistent" and were not supported by the objective diagnostic imaging, treatment history, and lab reports. The ALJ concluded that the objective medical evidence supported an RFC of light work.

Fifth, relying on the VE's testimony in response to the first hypothetical, the ALJ determined that, in light of his RFC, Goble was unable to perform his previous occupations, but found that Goble could perform other available jobs in the national economy—namely, parking lot attendant, cashier, and laundry worker. Accordingly, the ALJ concluded that Goble was not disabled.

### C. The SSA Appeals Council Denied Review

Goble filed a request for discretionary review of the ALJ's decision with the SSA's Appeals Council arguing that the ALJ's "decision to deny benefits [was] not based on substantial evidence, and the Judge failed to apply appropriate legal standards." Alongside his request, Goble submitted additional evidence to the Appeals Council. This evidence included (1) "a Physical Capacities Form completed by Mohammed Shubair," (2) "a Physical Capacities Form completed by Richard Diethelm," and (3) "treatment records from Alabama Neurology Associates."

In the first physical capacities form, Dr. Diethelm made several estimates regarding Goble's work capabilities. Dr. Diethelm estimated that Goble's anxiety, epilepsy, and migraines would limit his abilities such that he (1) could sit upright in a chair for only one hour at a time, (2) could stand for less than fifteen minutes at a time, (3) would need to lie down, sleep, or sit with his legs propped up for six hours out of an eight-hour day, (4) would be off task ninety percent of the time in an eight-hour day, and (5) would be expected to miss twenty days out of a thirty-day work period. Dr. Diethelm indicated that these limitations existed on July 11, 2018.

In the second physical capacities form, Dr. Shubair answered the same questions with different answers. Dr. Shubair estimated that Goble's asthma, sleep apnea, obesity, and blood clots in his legs would limit his abilities, such that he (1) could sit upright in a chair for four to five hours, (2) could stand for two to three hours at a time, (3) would need to lie down, sleep, or sit with his legs propped up for five to six hours of an eight-hour day, (4) would be off task eighty percent of the time in an eight-hour day, and (5) would miss work twenty-five to twenty-eight days out of a thirty-day period. Dr. Shubair could not opine as to whether the limitations existed on July 11, 2018, noting that she saw Goble for the first time in October 2019.

The Alabama Neurology records were the final piece of additional evidence. The records were from December 2013 to

16                    Opinion of the Court                    22-10842

March 2014 and documented Goble's migraines, seizures, and peripheral neuropathy attributed to his diabetes mellitus.

The Appeals Council denied Goble's request for review, explaining that it "found no reason under our rules to review the [ALJ's] decision." Importantly, the Appeals Council acknowledged Goble's additional evidence and stated that such evidence did not "show a reasonable probability that it would change the outcome of the decision."

### D. The District Court Affirmed

Goble thereafter filed suit in the Northern District of Alabama and alleged that "[t]he finding of the [Commissioner] that [Goble] was not disabled was not based upon substantial evidence and was not determined by proper legal standards." He also alleged that the Appeals Council's summary denial of his request for review implied that his new and material evidence was not read and considered.

Notably, in Goble's memorandum in support of his complaint, he alleged that he submitted three physical capacity forms to the Appeals Council, including one from Dr. Chadband. However, he also maintained that Dr. Chadband's form was omitted from the record which is why he included it as an attachment to his memorandum.[15]

---

[15] Dr. Chadband only partially filled out the form. Specifically, he only responded to one of the questions, indicating that he would expect Goble to be lying down, sleeping, or sitting with his legs propped up due to his medical

The district court concluded that "the Commissioner's decision [was] supported by substantial evidence" because "[t]he ALJ exhaustively reviewed the medical evidence of record and, with the assistance of the [VE], determined that, despite claimant's severe impairments, claimant retained the ability to perform light work" and that there were jobs available that he could perform, which meant he was not disabled. As to Goble's argument that the Appeals Council failed to consider the newly submitted evidence, the district court noted that the Appeals Council "considered it and determined that review of the ALJ's decision was not warranted because it was unlikely to change the outcome of the ALJ's decision." Furthermore, the district court noted that the Appeals Council's determination that the new evidence would not have changed the outcome was supported because the physical capacities forms were "unsupported by objective medical findings" and the Alabama Neurology records "significantly predate[d]" the alleged onset of Goble's disability (July 11, 2018). Accordingly, the district court affirmed the Commissioner's decision.

Goble now appeals to us.

## II.    Standard of Review

---

conditions for zero minutes in an 8-hour day. Nevertheless, he identified Goble's low blood sugar without warning, his need to "eat regular[ly]," check his blood sugar often, "doctor office visits," and history of past seizures as the conditions "causing [Goble's] limitations."

"When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based," but "we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In the Social Security context, the threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is "more than a mere scintilla" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). "Substantial evidence is less than a preponderance, and thus we must affirm an ALJ's decision even in cases where a greater portion of the record seems to weigh against it." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1103 (11th Cir. 2021) (quotations omitted). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178 (alteration in original) (quotations omitted).

## III.  Discussion

Goble brings two arguments on appeal. First, he argues that the Appeals Council erred in denying review of the ALJ's decision on the ground that the additional evidence submitted by Goble did not show a reasonable probability of changing the outcome of the decision. Second, he argues that the Commissioner's decision to deny benefits was not based on substantial evidence in light of the

22-10842               Opinion of the Court                19

additional evidence he submitted. We address each argument in turn.

### A. *The Appeals Council Properly Denied Review*

Goble first argues that the Appeals Council erroneously denied review on the ground that the physical capacity evaluations from his three treating physicians (Drs. Chadband, Diethelm, and Shubair)—did not show a reasonable probability of changing the outcome reached by the ALJ.[16]

Before proceeding to the operative law, we address Dr. Chadband's opinion. Although Goble states in his brief that he submitted Dr. Chadband's physical capacities evaluation to the Appeals Council, that assertion is not supported by the record. As stated by the Appeals Council in the "Additional Evidence" section

---

[16] Goble also asserts in passing in his counseled brief that "the opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." Goble cites no authority for this proposition, but it appears that he is referring to an older version of the Social Security regulations. Under the SSA's new regulations that apply to applications filed on or after March 27, 2017—like Goble's—no special weight is to be given to the medical opinions of a claimant's treating physician: "[SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, a specified list of factors are to be considered when evaluating medical opinions—the most important of which are (1) "supportability" which is a measure of how well a medical opinion is supported by objective medical evidence and (2) "consistency" which is a measure of how consistent a medical opinion is with other objective medical evidence from other sources. *Id.* § 404.1520c(b)(2), (c)(1)–(5).

Goble "submitted a Physical Capacities Form completed by Mohammed Shubair, dated September 22, 2020 (1 page); a Physical Capacities Form Completed by Richard Diethelm, dated October 22, 2020 (1 page); and treatment records from Alabama Neurology Associates . . . ." Further, Goble has already acknowledged that Dr. Chadband's form is not in the SSA record. Indeed, this fact is the very reason that Goble attached the form to a memorandum he filed in the district court.

Although there is a process for incorporating new evidence into a claim—through a "sentence six" remand which is the "sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court"[17]—Goble did not argue for such a remand below or as part of this appeal. Accordingly, Goble has forfeited any argument concerning the admission of Dr. Chadband's physical capacity evaluation form.[18] *See Stewart v. Dep't of Health & Hum. Servs.*,

---

[17] As we have explained:

> The sixth sentence of [42 U.S.C. § 405(g)] provides a federal court the power to remand the application . . . to the Commissioner for the taking of additional evidence upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quotations omitted).

[18] Even if we were to ignore that Goble (1) did not ask for a sentence six remand below, (2) does not ask for a sentence six remand in this appeal, and

26 F.3d 115, 115 (11th Cir. 1994) ("As a general principle, this court will not address an argument that has not been raised in the district court."); *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (*en banc*), *cert. denied* 143 S. Ct. 95 (Oct. 3, 2022) (explaining that an issue not raised in an appellant's initial brief is forfeited and only considered in "extraordinary circumstances" that are not present in this case).

Goble's overarching argument remains, however, and we must consider whether the Appeals Council incorrectly determined that the physical capacity evaluations by Drs. Diethelm

---

(3) does not lay out the standard for a sentence six remand, he would not be able to meet the three-part framework required for a sentence six remand. One element is that the evidence be "material," but Dr. Chadband responded "?" to four of the nine questions (*i.e.*, he did not answer them at all), provided known medical conditions that are explained elsewhere in the record as the conditions causing Goble's limitations (*i.e.*, low blood sugar and passing out at times), and offered only a single novel estimation (and that answer was that Goble would need to lie down, sleep, or sit with his legs propped up for zero minutes a day—which cuts against Goble's claim that he cannot even perform light work). *See Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) ("In order to demonstrate that a [sentence six] remand is necessary the *claimant must establish* that . . . the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result . . . ." (quotations omitted & emphasis added)). Simply put, there is no reasonable probability that Dr. Chadband's responses would "change the administrative result." *Id.*

22                    Opinion of the Court                    22-10842

and Shubair did not have a reasonably probability of changing the ALJ's determination.[19]

"[C]laimants are permitted to present new evidence at each stage of [the] administrative process, including before the Appeals Council." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, (11th Cir, 2021). The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Id.* (quoting 20 C.F.R. § 416.1470(a)(5)). "When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rational[e] for denying review.'" *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 n.5 (2015) (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)).

---

[19] The additional evidence that Goble submitted to the Appeals Council included "treatment records from Alabama Neurology Associates dated December 18, 2023 through March 26, 2014." However, we limit our consideration to his other submissions (the physical capacity examinations) for two reasons. First, the neurology records were largely duplicative (*i.e.*, the ALJ already had the majority of this information from other sources so the additional neurology records would not have changed the ALJ's analysis). Second, we agree with the district court's assessment that: "[T]he treatment records from Alabama Neurology Associates significantly predate claimant's alleged onset date of disability of July 12, 2018. Thus, the determination of the Appeals Council that those records would not have changed the outcome of the ALJ's decision has support."

The Appeals Council did not fail to consider the additional evidence submitted by Goble.  Rather, it considered the evidence—specifically the medical opinions of Drs. Diethelm and Shubair—and determined that the evidence did not have a reasonable probability of changing the ALJ's determination.  The opinions of Drs. Diethelm and Shubair were unlikely to change the outcome of the ALJ's decision—that Goble was not disabled and able to perform light work—because they were not supported by or consistent with the other medical evidence in this case.  20 C.F.R. § 404.1520c(c)(1)–(5).[20]

Much of the medical evidence in the record pointed to the fact that Goble's conditions had improved alongside proper medical care and attention to his medication and treatments.  This evidence contradicts the evaluations by Drs. Diethelm and Shubair which paint a bleak depiction of Goble's ability to work (*i.e.,* Dr. Diethelm opined that due to Goble's anxiety, epilepsy, and migraines he would be off task 90 percent of the day and miss work twenty days a month, but in a Return Patient Note in April 2020, Dr. Diethelm (1) noted that Goble was "doing much better" regarding his seizures, (2) wrote that Goble reported success with

---

[20] To be clear, cases like the instant case are reviewed differently than cases in which the Appeals Council refused to consider a claimant's additional evidence *at all*. *See Washington.*, 806 F.3d at 1321 n.5 (explaining that a more deferential review standard is applied when the Appeals Council considers a claimant's additional evidence as opposed to cases where the Appeals Council outright refuses to consider additional evidence that has been submitted).

medication for his headaches, and in May 2020, he (3) prescribed medication for anxiety because Goble's anxiety worsened after he stopped taking the medication).  Additionally, despite conducting a physical exam and noting that Goble's "[g]ait [was] steady" and that he had no focal motor or sensory deficiencies, Dr. Diethelm indicated on the physical capacities form that Goble would not be able to stand for even 15 minutes.

Additionally, Dr. Shubair indicated on the physical capacities form that Goble's asthma, sleep apnea, and morbid obesity would severely limit his ability to work, but Dr. Shubair also noted in October 2019 that Goble's use of a CPAP machine had "markedly improved" his sleep apnea and that Goble reported "wak[ing] up rested" and had "no excessive daytime sleepiness [and] no headache" alongside other pulmonological improvements after "bronchodilator therapy."

These inconsistences call into question the supportability and consistency of Goble's additional evidence.  As such, the Appeals Council's determination that the additional records did not have a reasonable probability of changing the ALJ's thorough and well-reasoned decision below is supported by the record.  And to the extent that Goble takes exception with the Appeals Council's lack of extensive explanation as to why the additional evidence would not have changed the outcome, that is also a losing argument.  *Washington*, 806 F.3d at 1321 n.5 ("When the Appeals Council accepts additional evidence, considers the evidence, and

then denies review, it is not required to provide a detailed rational[e] for denying review." (quotations omitted)).

### B. *The Commissioner's Determinations Were Based on Substantial Evidence*

Goble argues that the Commissioner's decision was not based on substantial evidence for several reasons. Goble argues (1) "[t]he Appeals Council wrongly held the three physical evaluations would not change the outcome," (2) "[t]he [ALJ's] Unfavorable Decision was not based on substantial evidence," and (3) "[t]he ALJ . . . relied on [VE] testimony that was not based on a correct or full statement of claimant's limitations and impairments." We already addressed Goble's argument that the Appeals Council erred in determining that there was not a reasonable probability that the new evidence would have changed the outcome, but we address the other two arguments below.

We start with Goble's argument that the ALJ's reliance on the VE's testimony was misplaced. Goble's argument is completely conclusory: he puts forth his argument and provides a short overview of the operative legal framework—but that is it. Goble argues that the ALJ did not account for all of the claimant's limitations but does not say which limitations went unaccounted for or the effect that those apparent mistakes would have had on the VE's assessment. Goble's argument is devoid of substance and, therefore, he has abandoned his argument. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion,

constitutes abandonment of that issue and precludes our considering the issue on appeal.").

Finally, we disagree with Goble's argument that the ALJ's determination was not supported by substantial evidence. Given the medical records that indicated Goble's various impairments were improving or could be addressed with proper medical care, there was sufficient evidence to find that he could still perform light work. *See Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." (quotations omitted)); *Simon*, 7 F.4th at 1103 ("Substantial evidence is less than a preponderance, and thus we must affirm an ALJ's decision even in cases where a greater portion of the record seems to weight against it." (quotations omitted)). In addition, while Goble's medical records were extensive, many of the visits led to various scans (CT scans, x-rays, or EKGs, etc.) that showed either no abnormalities or returned as "unremarkable." Moreover, the ALJ's RFC finding is consistent with the opinions of the state agency consultants. Simply put, substantial evidence supports the ALJ's determination that Goble has impairments, but they are not so debilitating that he is unable to perform light work.

**AFFIRMED**.